IN RE the MARRIAGE OF: James KERKVLIET,
Petitioner-Appellant,†

v.

Georgette KERKVLIET, Respondent-Respondent.

Court of Appeals

*No. 91-1204. Oral argument November 4, 1991.—Decided
January 22, 1992.*

(Also reported in 480 N.W.2d 823.)

†Petition to review denied.

932

On behalf of the petitioner-appellant, there were briefs and oral argument by *Judith M. Hartig* of *Hartig, Bjelajac, Michelson & Kivlin* of Racine.

On behalf of the respondent, there was a brief and oral argument by *Robert J. Grady* of *Fetek & Grady, S.C.* of Racine.

Before Nettesheim, P.J., Brown and Snyder, JJ.

NETTESHEIM, P.J. James Kerkvliet (James) appeals an order denying his motion to transfer the primary physical placement of his four minor children from his former wife Georgette Kerkvliet (Georgette) to himself. As provided by sec. 767.327, Stats., which governs the moving of a minor child's residence outside the state of Wisconsin by a divorced parent,[1] James sought the change in physical placement in response to Georgette's statutory notice to him that she intended to move with the children to Florida. The family court ruled that although each of the change in placement factors delineated in sec. 767.327(5) weighed in James' favor, it was nevertheless in the best interests of the children to

---

[1]Section 767.327, Stats., also governs the moving of a minor child's residence within the state of Wisconsin at a distance greater than 149 miles from the non-moving parent. This aspect of the statute is not before us on appeal.

retain their primary placement with Georgette. Because the court's discretionary ruling was based upon a correct interpretation of the law, we affirm.

James and Georgette were adjudged divorced on October 17, 1984, after nine years of marriage. The judgment awarded James and Georgette joint legal custody of their four minor children, whose ages now range from fifteen to seven. James was granted visitation rights.[2] James and Georgette are, as they were at the time of the divorce, both teachers in the Racine Unified School District.

In May of 1990, as required by sec. 767.327(1), Stats., Georgette gave notice to James of her intent to remove the children to Florida. James responded by filing a motion to change the primary placement of the children. *See* sec. 767.327(2). The matter was referred to mediation. After the mediation proved unsuccessful, a hearing on James' motion was held before the trial court on March 12, 1991.

At the hearing, Georgette testified as to her reasons for wanting to move to Florida. Referencing the changing racial composition of Racine and the Racine Unified School District during her tenure as an elementary school teacher, Georgette testified that she was unhappy with the "value system" and "lifestyle" in her school and in her neighborhood. Georgette offered several reasons for choosing Florida: she could have "a different situation for [her] teaching"; "[t]hey do not have bussing in

---

[2]The judgment of divorce was based upon the parties' stipulation which was incorporated into the judgment. A conflict exists, however, between the stipulation and the judgment as to the type of custody awarded. The stipulation vests Georgette with sole legal custody. However, the judgment vests both parties with joint custody. We invite the parties or the family court to clarify this inconsistency upon remittitur.

Florida"; "the people in Florida are very open and welcome"; "Florida is very similar to Wisconsin because of the trees and the landscape"; and "the weather."

Georgette further testified that she had lived in Wisconsin all her life, that neither she nor the children have relatives or friends in Florida, that she would likely have to take a cut in pay in a new teaching job, and that Florida schools would not be without their problems. She stated that she had considered teaching in the nearby Burlington, Wisconsin, school district and in private schools, but that while such action "would take care of half the problems . . . it would not also provide for the climate change." Georgette testified that she did not think the move would "be a big, major upset" to the children's relationship with James.

Other testimony at the hearing indicated that James had almost daily contact with the children through their school and extra-curricular activities, that he took care of the children when Georgette was busy, that he often mediated disputes between and among the children, and that he had the children at his home every other weekend. James testified that he felt the move would be "detrimental" to his relationship with the children. On cross-examination, however, he agreed that Georgette had done an excellent job as the children's primary caregiver.

The social worker assigned by the family court to conduct a custody study testified that while he believed Georgette's proposed move was a "want rather than a need," which would damage the children's relationship with James, he also believed that Georgette had done an excellent job rearing the children and that they "should remain with their mother." The guardian ad litem too, while stressing her belief that the proposed move was "unreasonable" and "not in the best interest of the chil-

935

dren," also testified that in light of the children's relationship to Georgette as their primary caregiver, she could not "in good faith recommend" that placement be transferred to James.

Terming Georgette's proposed move "inappropriate," "wrong," "disruptive," and "selfish," the trial court nevertheless determined that James had not met his burden of proof, and denied the motion. In reaching its conclusion, the court applied the removal statute, sec. 767.327, Stats., which provides in relevant part as follows:

> **(3) Standards for modification if move contested.** (a)1. Except as provided under par. (b), if the parent proposing the move has sole legal or joint legal custody of the child and the child resides with that parent for the greater period of time, the parent objecting to the move may file a petition, motion or order to show cause for modification of the legal custody or physical placement order affecting the child. The court may modify the legal custody or physical placement order if the court finds all of the following:
>
> a. The modification is in the best interest of the child.
>
> b. The move will result in a substantial change of circumstances since the entry of the last order affecting legal custody or the last order substantially affecting physical placement.
>
> . . ..
>
> **(5) Factors in court's determination.** In making its determination under sub. (3), the court shall consider all of the following factors:
>
> (a) Whether the purpose of the proposed action is reasonable.
>
> (b) The nature and extent of the child's relationship with the other parent and the disruption to

936

that relationship which the proposed action may cause.

 (c) The availability of alternative arrangements to foster and continue the child's relationship with and access to the other parent.

Section 767.327(3)(a)2.a, Stats., also creates a rebuttable presumption that continuing the current physical placement arrangements is in the best interest of the child. In addition, the burden of proof lies with the parent seeking the modification in physical placement. Section 767.327(3)(a)3.

The family court determined that all three of the sec. 767.327(5), Stats., factors, which inquire into the purpose of the proposed move and its effect on the noncustodial parent, weighed in James' favor. However, the court ultimately determined that the best interests of the children would not be served by transferring physical placement to James. The court concluded:

> [T]he bottom line, when all is said and done, is whether or not a modification by transferring . . . primary physical placement to the father is in the best interest of the children and based on this record, particularly the opinions of the social worker and the guardian, I'll make a finding the father has failed to meet the burden of convincing the Court that modifying the judgment . . . is in their best interest.[3]

---

[3]In his brief-in-chief, James characterizes the family court's decision as being based "solely on the finding that the mother had been the primary caretaker." This is not an accurate portrayal of the court's reasoning: the court relied on evidence to the effect that Georgette was an excellent caregiver and that although the proposed move was problematic, no reasons had been given which were sufficient to overcome the presumption in Georgette's favor. Thus, the court did not base its decision on the fact that Geor-

The court also concluded that it did not have the authority under the statute to leave custody with Georgette and yet forbid her from moving to Florida. James appeals.[4]

James argues that the family court abused its discretion in denying his motion, given that the court had found the three sec. 767.327(5), Stats., factors in his favor. Stated differently, James effectively argues that in a removal/modification case, the sec. 767.327(5) factors are the sole determinants of what is in the best interest of the child.[5] We disagree.

When the law still recognized the power of a family court to deny a removal request, such a determination was committed to the sound discretion of the circuit court. *See Long v. Long,* 127 Wis. 2d 521, 526, 381 N.W.2d 350, 353 (1986). Under the present statutory mechanism, the question is not the right of the custodial parent to move, but rather whether physical placement should be transferred to the objecting non-custodial parent. This question, we conclude, is also directed to the family court's discretion. *See Severson v. Severson,* 71 Wis. 2d 382, 386–87, 238 N.W.2d 116, 120 (1976).

The family court abuses its discretion when it either has not exercised discretion or has exercised its discre-

gette is the primary caregiver, but on the fact that Georgette is a good primary caregiver.

[4]On August 6, 1991, this court stayed the circuit court's order denying James' motion for a change of primary placement of the parties' children. This order effectively maintained the status quo pending this decision.

[5]In support, James cites to an article by Attorney Patricia Grove, *Moving the Residence of a Minor Child: The Impact of Wisconsin Statute 767.327,* The Milwaukee Lawyer, Vol. 11, No. 3, 1989, at 15.

tion on the basis of an error of law or irrelevant or impermissible factors. *Gould v. Gould,* 116 Wis. 2d 493, 498, 342 N.W.2d 426, 429 (1984). The error alleged here is one of law: an improper construction of sec. 767.327, Stats. On such questions, we need not defer to the family court's interpretation of the statute. *See Long,* 127 Wis. 2d at 526, 381 N.W.2d at 353.

In construing a statute, we are to give effect to the intent of the legislature. *Castle Corp. v. DOR,* 142 Wis. 2d 716, 720, 419 N.W.2d 709, 710 (Ct. App. 1987). To ascertain legislative intent, we look first to the statute's language. *McMullen v. LIRC,* 148 Wis. 2d 270, 274, 434 N.W.2d 830, 832 (Ct. App. 1988). If the language is plain and unambiguous, we may not use legislative history to establish ambiguity; conversely, we may use such sources to reinforce and demonstrate that a statute plain on its face, when viewed historically, is indeed unambiguous. *State v. Martin,* 162 Wis. 2d 883, 897 n.5, 470 N.W.2d 900, 905 (1991).

We note some additional tenets of statutory construction of particular importance to this case. The entire section of a statute *and related sections* are to be considered in its construction or interpretation; we do not read statutes out of context. *See State v. Barnes,* 127 Wis. 2d 34, 37, 377 N.W.2d 624, 625 (Ct. App. 1985). In determining the meaning of any single phrase or word in a statute, it is necessary to look at it in light of the whole statute and related sections. *White Hen Pantry v. Buttke,* 98 Wis. 2d 119, 122, 295 N.W.2d 763, 764 (Ct. App. 1980), *rev'd on other grounds,* 100 Wis. 2d 169, 301 N.W.2d 216 (1981). Statutes relating to the same subject matter are to be construed together and harmonized. *State v. Burkman,* 96 Wis. 2d 630, 642, 292 N.W.2d 641,

647 (1980). The cardinal rule in interpreting statutes is that the purpose of the whole act is to be sought and is favored over a construction which will defeat the manifest object of the act. *Milwaukee County v. DILHR,* 80 Wis. 2d 445, 453, 259 N.W.2d 118, 122 (1977).

With these principles in mind, we conclude that sec. 767.327, Stats., is clear and unambiguous. Subsection (3) sets out the *standards* which must be met for modification where a removal is contested: (1) the modification in custody or physical placement must be in the best interest of the child; and (2) the move will work a substantial change in circumstances.[6] Subsection (5) sets out *factors* which the court must consider when applying the subsec. (3) standards: (1) the purpose for the proposed move; (2) the effect of the proposed move; and (3) alternative arrangements to continue the child's relationship with the non-custodial parent. Thus, the legislature has created a mechanism which employs an interplay between the statute's standards and the statutory factors.

These two concepts are not synonymous. *Webster's Ninth New Collegiate Dictionary* defines a factor as "one that actively contributes to the production of a result." *Id.* at 444 (1990). This same source defines a standard as applying "to any definite rule, principle, or measure established by authority." *Id.* at 1148.[7] Under

---

[6]Neither party appears to dispute that Georgette's proposed move of the children to Florida would work a substantial change in circumstances.

[7]We may turn to a dictionary to divine the common and approved usage of non-technical terms which are undefined by the statute. *See State v. Gilbert,* 115 Wis. 2d 371, 377-78, 340 N.W.2d 511, 515 (1983).

these definitions, we conclude that a standard is a broader concept than a factor. A standard subsumes its factors. A court may apply a factor (depending upon its relevancy), but a court must always apply the applicable standard.

Section 767.327, Stats., is but one segment of ch. 767, Stats., which sets the best interest of the child as the standard in various custodial inquiries.[8] Of these statutes, only sec. 767.24, Stats., the statute governing the initial award of permanent custody or physical placement, recites a litany of factors which the family court must consider. Even these, however, are not exhaustive for "there is no hard-and-fast rule or formula which as yet has been defined for determining what combination of factors will ultimately assure the future welfare of a child who is the product of a broken home." *King v. King*, 29 Wis. 2d 586, 590, 139 N.W.2d 635, 637 (1966).

If the benchmark custody statute with its eleven statutory factors is not exhaustive as to the relevant considerations for an initial custody award, we conclude it makes no sense to constrict a modification/removal proceeding to the three narrow "factors" recited in sec. 767.327(5), Stats. This is especially so when: (1) the "standards" section of the statute invokes the all-encom-

---

[8]For example, the best interest of the child is a factor in the following settings: where a mediation agreement resolves custody, sec. 767.11(12)(a), Stats.; when a legal custody and physical placement study service makes an investigation and reports on a custody matter to the court, sec. 767.11(14)(a)3, Stats.; when the family court commissioner makes a temporary custody award, sec. 767.23(1n), Stats.; when the family court makes a final custody award, sec. 767.24(2)(b), Stats.; when the family court considers granting visitation rights to third parties, sec. 767.245, Stats.; when the family court considers revision of a custody or physical placement award, sec. 767.325(1), Stats.

passing phrase "best interest of the child;" (2) subsec. (5) does *not* say that the family court is limited to only the three factors set out therein; and (3) the three factors recited in subsec. (5) speak only to motive for the proposed move and the effect of the move on the non-custodial parent, without any consideration of the multitude of other factors which may ordinarily bear upon what is best for the child.

 From this we conclude that it is logical to construe the sec. 767.327(5), Stats., factors as being addenda to the range of otherwise relevant "best interest of the child" considerations as set forth in sec. 767.24, Stats., and the other statutes concerning aspects of custody. Put differently, the sec. 767.327(5) factors are a reminder to the courts to tailor the "best interest of the child" standard to problems unique to a removal situation.

Our reading is amply borne out by the legislative history of sec. 767.327, Stats.[9] Section 767.327 was created by 1987 Wis. Act 355, sec. 46m. This legislation was a comprehensive revision of the child custody aspects of the family code. Section 767.245(6), Stats. (1985–86), the predecessor removal statute, contained no specific directive to the family court to consider the impact of the proposed move upon the relationship between the child and the non-custodial parent. Section 767.327, the present removal statute, represents, like the other changes wrought by 1987 Wis. Act 355, an attempt to prevent or minimize the emotional—if not actual—disenfranchisement of the parent who does not have custody or primary placement. *See* 1987 Wis. Act

___

[9]Again we observe that we may look to legislative history to reinforce and demonstrate that a statute is plain on its face. *State v. Martin,* 162 Wis. 2d 883, 897 n.5, 470 N.W.2d 900, 905 (1991).

355, prefatory note; and 1987 Wis. Act 355, sec. 1 and accompanying explanatory note. While the three subsec. (5) factors serve this end, the legislature has also notably prescribed the best interest of the child as one of the standards which must ultimately govern a removal/modification proceeding.

We also observe that our reading of the statute avoids an otherwise unreasonable and absurd result. As we have already noted, the sec. 767.327(5), Stats., factors focus exclusively upon the motive for the proposed move and the likely effect on the relationship between the child and the non-custodial parent. However, these considerations do not invoke the numerous other considerations which are commonly associated with best interest of the child. Thus, if these three factors are the sole determinants of the best interest of the child standard in sec. 767.327(3)(b)1.b, the court could be obliged to change the child's primary physical placement *with no regard for the quality of the child's relationship with the moving parent or the non-custodial parent's ability—financial, emotional and physical—to shoulder the responsibilities associated with acquiring primary physical placement.* This, we conclude, would represent an unreasonable construction of the statute. We are to avoid such results.[10] *Burkman,* 96 Wis. 2d at 642, 292 N.W.2d at 647.

James next argues that in looking to factors beyond the three enumerated in sec. 767.327(5), Stats., the family court applied the functional equivalent of the standard found in sec. 767.325, Stats., which governs revi-

---

[10]Our conclusion also governs James' argument, shared by Attorney Grove in her article, that only the three factors in sec. 767.327(5), Stats., should govern a removal/modification proceeding because the statute contains no "catch-all" provision or cross-reference to the litany of factors set out at sec. 767.24(5), Stats.

sions in custody and placement orders. In so doing, James argues that the court rendered the three factors in the removal statute a nullity. "Under this interpretation," contends James, "no non-custodial parent could stop a removal under sec. 767.327 unless they [sic] had the grounds under sec. 767.325." We disagree.[11]

Section 767.325, Stats., concerns modifications in custody and primary physical placement *in the absence of a removal.* However, the three additional factors enumerated in the removal statute, sec. 767.327(5), Stats., instruct the family court to consider the impact of the move upon the child's relationship with the non-moving parent *in addition to* the range of otherwise relevant factors. Here, the family court simply determined that *in this case* Georgette's abilities as the primary caregiver were not outweighed by the impact of the move upon the children's relationship with James.

This does not mean, as James' argument implies, that the removal factors can *never* tip the balance in the non-custodial parent's favor. The fatal flaw in James' argument is that it presumes Georgette's value as a caregiver is entirely measured by her reasons for wanting to move to Florida. Poor as her reasons may be, it remains that the family court ultimately concluded that the best interests of the children required that their physical placement remain with Georgette.[12] Our con-

---

[11]In conjunction with this argument, James renews his argument that the family court's decision is premised solely on the finding that Georgette has been the primary caretaker. We have already rejected this attack on the court's decision. *See supra* note 3.

[12]Even James testified that Georgette is an "excellent" mother.

struction does not render the sec. 767.327(5), Stats., factors superfluous.

Next, James argues that even where a change in the custody and physical placement order is not warranted, the family court may nevertheless order that the moving parent be denied permission to remove the children.[13] James' argument rests on three interrelated contentions: (1) that sec. 767.327(5), Stats., is a codification of *Long v. Long,* 127 Wis. 2d 521, 381 N.W.2d 350 (1986); (2) that under *Long,* circuit courts had the power to deny a parent permission to remove; and (3) that because the sec. 767.327(5) factors appear to codify the holding of *Long,* "767.327 contains the elements of the [predecessor statute] and case interpretations and retains by implication the right to deny removal."

James misunderstands both the significance of *Long* and the thrust of Grove's interpretation. *Long* was decided under sec. 767.245(6), Stats. (1983–84), the predecessor removal statute. It is the text of that statute, not *Long,* which granted the courts the power to deny permission to remove. The present statute bestows no such authority on the family court. Instead, the only remedy available to the non-custodial parent is to seek a modification of custody or physical placement.[14] Where the legislature has repealed a statute and created a new

---

[13]James again cites Attorney Grove's article in support. However, as our ensuing discussion demonstrates, we believe that Attorney Grove's position on this question is in accord with our conclusion.

[14]Attorney Grove would agree. In her article she states that it is her "opinion . . . that the trial court does **not** have the authority to prohibit the minor child's removal from the state. It has the authority only to order that the child's custody or physical placement be transferred to the non-moving parent. By virtue of the

statute on the same subject, differences in language between the new statute and its predecessor must be presumed the result of deliberate choice exercised by the legislature. What sec. 767.327, Stats., codifies of *Long,* if indeed that was the legislature's intent, is its method of analyzing the child's relationship with the non-moving parent for the purpose of ruling upon a motion for a modification in custody or physical placement. *See Long,* 127 Wis. 2d at 532–35, 381 N.W.2d at 356–57.

The trial court committed no error of law and thus did not abuse its discretion in denying James' motion.

Like the family court, we are sensitive to and troubled by the harsh result dictated by the statute in this case. James is a model non-custodial parent. And although Georgette's reasons for her proposed move are feeble and insensitive, the fact remains that she is an excellent primary caregiver to the children. It also remains that our and the family court's role is confined to interpreting the statute according to the legislature's intent. In the face of a custodial parent's stated intent to remove, the legislature has chosen to limit a non-custodial parent's remedy to the heavy burden of demonstrating that a modification of custody or physical placement is in the best interest of the child.

Wise policy or not, where a legislative mandate is clearly expressed, we are not free to impose our view of what perhaps the law should be. *Stann v. Waukesha*

custody or placement transfer, the child is 'prohibited' from moving." Grove, *supra,* note 5, at 17 (emphasis in original).

*County,* 161 Wis. 2d 808, 827, 468 N.W.2d 775, 783 (Ct. App. 1991).

 *By the Court.*—Order affirmed.