IN RE the PATERNITY OF LACHELLE A.C.:

STATE of Wisconsin, Petitioner-Appellant,

CECELIA C., Petitioner,

v.

WILLIAM W., Respondent-Respondent.†

Court of Appeals

*No. 93–0623–FT. Submitted on briefs August 11, 1993.—Decided December 7, 1993.*

(Also reported in 510 N.W.2d 718.)

†Petition to review denied.

708

710

For the petitioner-appellant the cause was submitted on the briefs of *Frederick C. Rosa*, Child Support Legal Counsel, of Milwaukee.

For the respondent-respondent the cause was submitted on the briefs of *Patricia L. Grove*, of *Halling & Cayo, S.C.*, of Milwaukee.

Before Sullivan, Fine and Schudson, JJ.

SULLIVAN, J.   The State of Wisconsin appeals from an order of the circuit court placing child support arrearages in trust for the benefit of Lachelle A.C. The issue is whether the trial court has authority to order that accrued child support be placed in trust for a child where the child's custodial parent was receiving AFDC during the time support accrued. Pursuant to this court's order dated April 14, 1993, this case was submitted to the court on the expedited appeals calendar. *See* Rule 809.17, Stats. Upon review of the briefs and the record, we reverse the trial court's order.

The facts are not in dispute. The State commenced a paternity action against William W. in April 1990, alleging that he was the father of Lachelle A.C. In July 1992, after a jury trial, William W. was adjudicated to be Lachelle's father. The trial court set child support payments at $265 per month, seventeen percent of William W.'s income. Because Cecelia C., Lachelle's

711

mother, was receiving AFDC, child support was ordered payable to the State.

The court set past support, owed from the date of Lachelle's birth to the date of adjudication, at seventeen percent of William's income. The guardian ad litem requested that one-half of the past child support be placed in trust to be used for Lachelle's future benefit.[1] The State objected to placing the money in trust because Cecelia C. and Lachelle A.C. were receiving AFDC during the time when past support accrued. Finding that Cecelia C. and Lachelle A.C. were living below the federal poverty guidelines, and that AFDC was not enough to meet their monthly expenses, the trial court ordered that all payments towards past support be made to a trust, rather than to the State. The court stated that it would authorize disbursement of funds from the trust at the guardian ad litem's request for anything necessary to provide Lachelle with a "decent subsistence."

The State argues that the entire amount of past support is owed to the State under sec. 49.19(4)(h)1.b, Stats., because Lachelle and her mother received AFDC during the period for which past support is owed. The statute provides:

> Except as provided under sub. (5)(a)1m, when any person applies for or receives aid under this section, any right of the parent or any dependent child to support or maintenance from any other person, including any right to unpaid amounts accrued at

---

[1] Section 767.25(2), Stats., provides that "[t]he court may protect and promote the best interests of the minor children by setting aside a portion of the child support which either party is ordered to pay in a separate fund or trust for the support, education and welfare of such children."

the time of application and any right to amounts accruing during the time aid is paid under this section, is assigned to the state.

Because interpretation of a statute presents a question of law, we decide the issue independently of the lower court's decision. *State v. R.R.E.*, 162 Wis. 2d 698, 706-07, 470 N.W.2d 283, 286 (1991). The purpose of our review is to ascertain the intent of the legislature. *Voss v. City of Middleton*, 162 Wis. 2d 737, 749, 470 N.W.2d 625, 629 (1991). In ascertaining the legislature's intent, our primary guide is the statute's language. *Kerkvliet v. Kerkvliet*, 166 Wis. 2d 930, 939, 480 N.W.2d 823, 826 (Ct. App. 1992). If the language of the statute "clearly and unambiguously sets forth the legislative intent, it is our duty to apply that intent to the facts and circumstances of the case; we are prohibited from looking beyond the language of the statute to ascertain its meaning." *Voss*, 162 Wis. 2d at 749, 470 N.W.2d at 629. A statute clearly and unambiguously sets forth the legislative intent where no more than one reasonable meaning can be attributed to it. *Id.* at 750, 470 N.W.2d at 630.

The language of sec. 49.19(4)(h)1.b, Stats., is plain—when any person receives AFDC, "any right of the parent or any dependent child to support . . . , including . . . any right to amounts accruing during the time aid is paid under this section, *is assigned to the state*." (Emphasis added.) No more than one reasonable meaning can be attributed to this language. Through the statute, the legislature has "assigned to the state" Lachelle's right to support which "accru[ed] during the time aid [wa]s paid under this section." The trial court had no authority to order that the past support be paid

713

into trust. The right to that support no longer belongs to Lachelle. It has by legislative mandate been assigned to the State. *See also* sec. 767.075(1)(c), Stats. ("The state is a real party in interest . . . for purposes of . . . securing reimbursement of aid paid . . . [w]henever aid under s. 49.19 . . . is provided to a dependent child.").

The guardian ad litem argues that because sec. 49.19, Stats., does not provide when reimbursement must be made to the State, the trial court can establish the trust for Lachelle, and her mother can reimburse the State at some future point. This argument misses the point. Regardless of whether or when Lachelle's mother might intend to reimburse the State, she and Lachelle are deemed to have assigned "any right" to support payments to the State. Therefore, Lachelle has no right to receive support payments through a trust even if her mother intends to reimburse the State.

Finally, Lachelle's guardian ad litem argues that the statute violates equal protection because it creates two classes of children—those who can have trust funds (non-AFDC children) and those who cannot (children on AFDC). We understand the guardian ad litem's argument to be that, absent the statutory provision in question, any child who receives child support payments from a parent could, in theory, have that money put into a court-ordered trust. Thus, the argument continues, the statute effectively distinguishes between children based solely on the fact that some of those children receive AFDC benefits and others do not. The question then, is whether the statute violates equal protection because it prevents the AFDC children from enjoying the advantages of a trust for their child support funds. We conclude that it does not.

The Wisconsin Supreme court has explained:

714

> Equal protection does not deny a state the power to treat persons within its jurisdiction differently; rather, the state retains broad discretion to create classifications so long as the classifications have a reasonable basis. The fact a statutory classification results in some inequity, however, does not provide sufficient grounds for invalidating a legislative enactment. Where, as here, a suspect classification is not alleged, the legislative enactment "must be sustained unless it is 'patently arbitrary' and bears no rational relationship to a legitimate government interest." "If the classification is reasonable and practical in relation to the objective, that is sufficient and doubts must be resolved in favor of the reasonableness of the classification."

*State v. McManus*, 152 Wis. 2d 113, 131, 447 N.W.2d 654, 660-61 (1989) (citations omitted).

As in *McManus*, Lachelle's guardian ad litem has not alleged that the classification is suspect. Thus, to uphold its constitutionality, this court need only conclude that the statutory distinction, based upon the receipt of AFDC funds, is reasonably related to a legitimate governmental interest.

The State has a legitimate interest in conserving the limited funds it has available to provide for all needy children. The clear objective of the statute—to allow the State to recoup AFDC funds where possible—is reasonably related to the legislature's need to conserve those limited funds. It is not this court's place to "second-guess state officials charged with the difficult responsibility of allocating limited public welfare funds among the myriad of potential recipients." *See Dandridge v. Williams*, 397 U.S. 471, 487 (1970) (upholding Maryland's public welfare program, which

715

set a maximum amount of aid one family could receive regardless of family size, under a constitutional equal protection attack). Thus, we conclude that the statute does not violate equal protection.

In conclusion, section 49.19(4)(h)1.b, Stats., allows "the state to recover from the noncustodial parent child support assistance which the state has paid or will pay because the noncustodial parent is not paying his or her appropriate child support." *State v. Halverson*, 162 Wis. 2d 453, 457, 470 N.W.2d 313, 315 (Ct. App. 1991) (trial court misused its discretion by refusing to increase husband's support obligation because most of it would be paid to AFDC and would not benefit family). To the extent the trial court attempted to deprive the State of reimbursement of support it paid when William W. was not making support payments, its ruling "negates the legislative plan to require parents to support their children." *Id.*

*By the Court.*—Order reversed.

SCHUDSON, J. (*concurring*). The majority's rationale rejecting the guardian ad litem's equal protection argument addresses whether "[t]he State has a legitimate interest in conserving the limited funds it has available to provide for all needy children." Majority op. at 715. That, however, is not the issue in this case. The issue, I think, is whether the different status of children on AFDC constitutionally allows courts to treat them differently from children not on AFDC when considering whether trusts may be ordered on their behalf. Unfortunately, on this issue, the parties have offered little authority.

The guardian ad litem argues that the State's position would produce a "prohibition on the use of a trust

when AFDC is received." In its brief to this court, however, the State maintains that it "has not argued that an AFDC recipient can never have a child support trust." Indeed, the State argues that it often "will advocate for a trust . . . when the noncustodial parent has been proven unreliable in making timely and consistent child support payments and there are sufficient resources available to establish a trust."

If, as I think the State's argument may implicitly concede, sec. 49.19(4)(h)1.b, Stats., effectively prohibited courts from ordering trusts for children on AFDC, it might very well violate equal protection. If, however, children on AFDC remain eligible for court-ordered trusts, and if any difference in their eligibility for trusts results from a reasonable classification, see *State v. McManus*, 152 Wis. 2d 113, 130-31, 447 N.W.2d 654, 660-61 (1989), then, as the majority explains, sec. 49.19(4)(h)1.b would comport with equal protection. These possibilities, however, are just that — possibilities, unknown and undeveloped on the record before us. Without resolving the potential equal protection issue, however, I do agree that the trial court order violated the statutory requirement that the child support arrearages be assigned to the State. Accordingly, I concur.