IN RE the MARRIAGE OF Julia LUNA, Petitioner,

STATE of Wisconsin, Appellant,

v.

Ramiro LUNA, Jr., Respondent-Respondent.†

Court of Appeals

*No. 92–1753. Submitted on briefs April 6, 1993.—Decided March 1, 1994.*

(Also reported in 515 N.W.2d 480.)

†Petition to review denied.

For the appellant, State of Wisconsin, the cause was submitted on the briefs of *Milwaukee County Department of Child Support Enforcement*, with *Faye Simon* and *Theodore Spyres* of Milwaukee.

The respondent did not file a brief.

For the minor children the cause was submitted on the briefs of *Halling & Cayo, S.C., guardian ad litem for the minor children*, with *Patricia L. Grove* of Milwaukee.

Before Wedemeyer, P.J., Sullivan and Schudson, JJ.

SCHUDSON, J. The State of Wisconsin appeals from the trial court order placing Ramiro Luna, Jr.'s child support payments and arrearages into a trust fund in which the money will be held for the benefit of his and Julia Luna's three children until such time as they no longer receive benefits through a grant of Aid to Families with Dependent Children. The issue is whether the trial court has the authority to treat the non-custodial parent's post-divorce income as marital property and order the child support payments into a trust fund for the children where the custodial parent receives AFDC benefits. We reverse.

The basic facts are not in dispute. Ramiro and Julia Luna divorced in 1987. In 1992, Mr. Luna sought a reduction in his child support payments. The family court commissioner, however, increased Mr. Luna's child support obligations, based on his income, ordering that he pay $465 per month, plus $40 per month on arrears of $17,000.

Mr. Luna moved the trial court for a review of the court commissioner's order. The trial court found no flaw in the amount determined by the commissioner. The trial court ruled, however, that Mr. Luna's income should be treated as marital property under § 767.255, STATS.,[1] and held in a trust fund "so the State doesn't get it . . . ." The court further ruled that Ms. Luna could

[1] Section 767.255, STATS., provides, in part, "[u]pon every judgment of annulment, divorce or legal separation, or in rendering a judgment in an action under s. 767.02(1)(h) [action for property division], the court shall divide the property of the parties and divest and transfer the title of any such property accordingly."

apply to the court for disbursement of the funds "at such time as she no longer receives AFDC."[2]

The State argues that the trial court erred by: (1) reducing the child support and arrears to zero; (2) converting Mr. Luna's post-divorce income into marital property, in an amount equal to that ordered as support by the family court commissioner; and (3) directing Mr. Luna to pay that amount to a child support trust, thereby denying the State its right to seek reimbursement for AFDC payments to Ms. Luna. The State contends that the child support payments and

---

[2] There was some variance between the trial court's oral ruling and its written order that stated, in part:

THE COURT FINDS:

1. The Respondent has the ability to comply with the payment of the current order of $465.00 per month for child support and $40.00 per month toward arrears;

2. That, pursuant to 767.255, Wis. Stats., the Respondent's income can be treated as marital property, and therefore what has been determined to be child support payments, can be converted into a trust fund with the money paid into the fund held for the benefit of the children at such time as they no longer receive AFDC benefits.

NOW THEREFORE THE COURT ORDERS:

1. That child support is set at zero.

2. That repayment of existing child support arrears is set at zero.

3. That the Respondent shall continue to make the previously ordered payments of $505.00 per month to the Clerk of the Circuit Court. Said payments shall be placed in a trust fund for the children of this marriage.

4. That said trust funds shall only be released to the Petitioner at such time as she is no longer receiving AFDC and petitions the Court for the release of said funds.

arrears due to Ms. Luna are owed to the State pursuant to § 49.19(4)(h)1.b, STATS., which states:

> Except as provided under sub. (5)(a)1m, when any person applies for or receives aid under this section, *any right of the parent or any dependent child to support or maintenance* from any other person, including any right to unpaid amounts accrued at the time of application and any right to amounts accruing during the time aid is paid under this section, *is assigned to the state.*

(Emphasis added.) The State is correct.

The statute expressly assigns to the State any right to child support that an AFDC recipient has under the statute. *See In re Lachelle A.C.*, 180 Wis. 2d 708, 713-714, 510 N.W.2d 718, 720 (Ct. App. 1993). Although a modification of child support is within the discretion of the trial court and will not be overturned unless the trial court erroneously exercised that discretion, *Burger v. Burger,* 144 Wis. 2d 514, 523, 424 N.W.2d 691, 695 (1988), a trial court does erroneously exercise its discretion where it deprives the State of reimbursement for payments, pursuant to § 49.19(4)(h)1.b, STATS. *See Lachelle A.C.,* 180 Wis. 2d at 716, 510 N.W.2d at 721. *See also Resong v. Vier,* 157 Wis. 2d 382, 387, 459 N.W.2d 591, 593 (Ct. App. 1990) (where exercise of discretion is based upon error of law, trial court acts beyond limits of discretion and decision cannot stand).

In *State v. Halverson,* 162 Wis. 2d 453, 470 N.W.2d 313 (Ct. App. 1991), the trial court refused to increase the non-custodial parent's support obligation because most of it would reimburse the State for AFDC payments and would not benefit the family. *Id.* at 455, 470

N.W.2d at 314-315. We reversed, concluding that "[t]he court's refusal [to increase the support] negates the legislative plan to require parents to support their children . . . [because the statutes] allow the state to recover from the noncustodial parent child support assistance which the state has paid or will pay because the noncustodial parent is not paying his or her appropriate child support." *Id.* at 457, 470 N.W.2d at 315.

In *Lachelle A.C.*, which we decided after the trial court's order in this case, we reversed a trial court order placing child support arrearages into a trust for the child because she and her mother received AFDC during the time when past support accrued. We explained that although a trial court has discretion to set up a trust for the benefit of children,[3] it cannot do so to deprive the State of reimbursement for AFDC payments. *See Lachelle A.C.*, 180 Wis. 2d at 714-716, 510 N.W.2d at 720-721. Thus, we concluded that "[t]he trial court had no authority to order that the past support be paid into [a] trust. The right to that support no longer belongs to [the AFDC recipient]. It has by legislative mandate been assigned to the State." *Id.* at 713-714, 510 N.W.2d at 720.[4]

---

[3] Section § 767.25(2), STATS., provides that "[t]he court may protect and promote the best interests of the minor children by setting aside a portion of the child support which either party is ordered to pay in a separate fund or trust for the support, education and welfare of such children."

[4] We recently addressed the issue of whether the trial court could allow equitable credit for past support paid where the State seeks reimbursement of AFDC payments. *In re Cheyenne D.L.*, 181 Wis. 2d 868, 512 N.W.2d 522 (Ct. App. 1993). In *Cheyenne D.L.*, the putative father was allowed a credit for past support obligations because he was found to have supported the mother and the child during the time that past support was

In the present case, the trial court apparently attempted to circumvent the State's statutory right to reimbursement by setting child support at zero, classifying an amount equivalent to the child support as "marital property," and ordering the payments into a trust. Section 767.32(2), STATS., however, mandates that the court apply the percentage standard when revising a judgment or order with respect to child support payments.[5] The trial court may deviate from that standard upon considering the factors listed in

owed. Even though the mother received AFDC during that period and the State was entitled to reimbursement, we affirmed the trial court's conclusion that it would be unfair to require that support be paid twice for the same period.

In distinguishing *Cheyenne D.L.* from *Halverson, Lachelle A.C.* and the present case, we note that under § 49.19(4)(h)1.b, STATS., the State has a right to "*unpaid* amounts accrued at the time of application [for AFDC] and any right to amounts accruing during the time aid is paid under this section." (Emphasis added.) In *Cheyenne D.L.*, the trial court found that past support had actually been paid and the court allowed a credit for those amounts. In the other cases, however, the support was unpaid and the issues concerned (1) whether to order that the support be paid, because to do so would reimburse the State for AFDC, or (2) whether the unpaid support could be ordered into a trust, thus avoiding reimbursement to the State.

[5] Section 767.32(2), STATS., states that if the court revises a child support judgment or order, "it shall do so by using the percentage standard established by the department of health and social services . . . ." That provision is subject to (2m), which states: "Upon request by a party, the court may modify the amount of revised child support payments determined under sub. (2) if, after considering the factors listed in s. 767.25(1m) or 767.51(5), as appropriate, the court finds, by the greater weight of the credible evidence, that the use of the percentage standard is unfair to the child or to any of the parties."

§ 767.25(1m), STATS.,[6] and finding by the greater weight of the credible evidence that the percentage standard is unfair to the child or to any of the parties. Applying the statutory standard and factors, the family court commissioner set Mr. Luna's child support at $465.00 per month, plus $40.00 per month for existing arrears.

Overturning the family court commissioner's decision and setting child support at zero, the trial court failed to make any findings or apply the standard required under the statute for such a modification. Indeed, the only reason the trial court gave for its decision was "so the State doesn't get it, so it goes into a fund for the children." We conclude that in this respect, also, the trial court erroneously exercised its discretion based on its failure to apply the law.

Additionally, we conclude that the trial court had no authority to classify Mr. Luna's post-divorce income as "marital property" under § 767.255, STATS. The statute provides that "*[u]pon* every judgment of annulment, divorce or legal separation, or in rendering a judgment in an action under s. 767.02(1)(h) [for property division], the court *shall* divide the property of the parties and divest and transfer the title of any such property accordingly." (Emphasis added.) A clear reading of this statute indicates that marital property is to be divided at the time of divorce or legal separation. A

---

[6] Among the factors listed in § 767.25(1m), STATS., are: the financial resources of the child or of both parents; the amount of maintenance received by either party; the educational needs of the child; the physical, mental and emotional needs of child; the earning capacity of each parent; and the best interests of the child.

28

non-custodial parent's income earned years after the divorce action cannot retroactively be labeled marital property under § 766.31, STATS.[7] *See* § 767.32(1), STATS. ("nor shall the provisions of a judgment with respect to final division of property be subject to revision or modification").

The Guardian ad Litem argues that since the action was originally a divorce action, the trial court can consider Mr. Luna's income as property under § 767.255, STATS. The Guardian ad Litem cites several cases in which she argues future income was treated as property at the time of divorce for purposes of valuation and division between the spouses. *See, e.g., Haugan v. Haugan,* 117 Wis. 2d 200, 343 N.W.2d 796 (1984) (future earnings of student spouse to be considered in determining property division and maintenance award for non-student spouse who put student-spouse through school); *Bloomer v. Bloomer,* 84 Wis. 2d 124, 267 N.W.2d 235 (1978) (pension benefits characterized as property at the time of divorce); *Krebs v. Krebs,* 148 Wis. 2d 51, 435 N.W.2d 240 (1989) (although entire property division was subject to § 767.255, injured spouse presumptuously entitled to personal injury proceeds, which were part of a structured settlement to receive income over a term of years). The distinction between those cases and this one, however, is that in this case post-divorce future income was not taken into consideration *at the time of the divorce*, pursuant to § 767.255.

---

[7] Section § 766.31(1), STATS., **"Classification of property of spouses,"** provides that "[a]ll property of *spouses* is marital property . . . ." (Emphasis added.) Once the parties are divorced, they are no longer "spouses" and their property is not subject to this section.

29

█ Finally, the Guardian ad Litem argues that not permitting the creation of a trust in these circumstances violates the children's equal protection rights under the State and Federal Constitutions. *Lachelle A.C.* directly addressed this argument and concluded that equal protection was not violated because "[t]he State has a legitimate interest in conserving the limited funds it has available to provide for all needy children. The clear objective of the statute — to allow the State to recoup AFDC funds where possible — is reasonably related to the legislature's need to conserve those limited funds." *Lachelle A.C.*, 180 Wis. 2d at 715, 510 N.W.2d at 721.

The trial court erroneously exercised discretion by setting child support at zero, converting post-divorce income into marital property, and ordering that income into a trust. Accordingly, we reverse the trial court order and remand for further proceedings consistent with this opinion.

*By the Court.*—Order reversed.