J. Denis MORAN, Plaintiff-Respondent,

v.

WISCONSIN DEPARTMENT OF ADMINISTRATION and Mark
D. Bugher, its Secretary, and Wisconsin Department
of Employment Relations and Jon E. Litscher, its
Secretary, Defendants-Appellants.†

Court of Appeals

*No. 98–3008. Submitted on briefs June 25, 1999.—Decided
August 19, 1999.*

(Also reported in 603 N.W.2d 234.)

†Petition to review denied.

103

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Susan K. Ullman,* assistant attorney general, with whom on the briefs was *James E. Doyle,* attorney general.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Todd G. Smith* and *Jeffrey J. Kassel* of *LaFollette Sinykin, LLP,* Madison.

Nonparty letter brief was submitted by *Stewart Simonson* as legal counsel to the Governor of Wisconsin.

Before Paul C. Gartzke, Michael T. Sullivan, and Daniel L. LaRocque, Reserve Judges.[1]

GARTZKE, J. The Wisconsin Departments of Administration and Employment Relations (DOA and DER), and their respective secretaries (collectively, the

---

[1] Chief Justice Abrahamson designated and assigned reserve judges Hon. Paul C. Gartzke, Hon. Michael T. Sullivan, and Hon. Daniel L. LaRocque to serve *temporarily in the Court of Appeals, Dist. IV to hear and decide this appeal. See* WIS. CONST. art. VII, § 4(3).

Departments), appeal from an order granting the Director of State Courts' motion for summary judgment declaring that the salary cap provision of § 20.923(15)(b), STATS., does not apply to judicial salaries. Governor Tommy G. Thompson filed an *amicus curiae* brief in support of the Departments' appeal. The issue is whether judicial salaries are subject to limitation under § 20.923 such that the salary cap provision in paragraph (15)(b) applies to them. If it does, then the pay of a judge may not equal or exceed the salary paid to the governor, notwithstanding the compensation plan the Joint Committee on Employment Relations (JCOER) approved, effective November 4, 1997. We hold that judicial salaries are not subject to limitation under the statute and therefore affirm.

## BACKGROUND

We begin with an overview of the history of the statute and events which led to this appeal. In 1967, the Wisconsin legislature enacted § 20.923, STATS., entitled "Statutory Salaries," to establish a salary setting mechanism[2] for elected officials, appointed state agency heads, division administrators and other executive level unclassified positions. Laws of 1967, ch. 291, § 12. Effective in 1979, the legislature added to the statute the following salary cap provision:

> Effective the first Monday of January 1979, and thereafter, the pay of *any incumbent of a position assigned to an executive salary group* under this section shall not equal or exceed that amount paid the governor.

---

[2] The prior version of ch. 20 set forth specific maximum salary amounts for selected state positions, including the judiciary.

Laws of 1973, ch. 333, § 61t (pub. June 28, 1974, eff. Jan. 1, 1979)[3] (emphasis added).[4]

When the gubernatorial-linked salary cap first became effective, judicial salaries were assigned to executive salary groups. *See* § 20.923(2)(d) and (j), STATS., 1979–80. Effective in 1984, the legislature removed judicial salaries from the executive salary groups and set up a mechanism for the independent determination of judicial salaries. 1983 Wis. Act 121, §§ 1–3 (eff. Feb. 22, 1984). Under the current procedure, the annual salary for each supreme court justice, court of appeals judge and circuit court judge is determined "in the same manner as provided for positions in the classified service under s. 230.12(3)." Section 20.923(2)(b), STATS.

Section 230.12(3), STATS., requires the Secretary of DER to prepare and submit proposed adjustments to the state's compensation plan for positions in the classified service to JCOER[5] on a biannual basis for the ensuing two fiscal years. JCOER may modify the proposals. The governor may disapprove any modification. In the event of the governor's disapproval, the proposal is remanded to JCOER, where six of the committee's eight members may override the disapproval.

---

[3] We have been offered no explanation why the effective date of the salary cap was delayed by nearly five years.

[4] The salary cap provision was originally designated § 20.923(16)(b), STATS. It was renumbered § 20.923(15)(b) by Laws of 1979, ch. 221, § 216.

[5] JCOER is composed of the senate and assembly cochairpersons of the joint committee on finance, the assembly majority and minority leaders, the senate majority and minority leaders, the speaker of the assembly and the president of the senate. Section 13.111(1), STATS.

When the salary cap took effect in 1979, a number of University of Wisconsin officials were also assigned to executive salary groups. *See* § 20.923(4)(e)12, (g)5–(8), (h)2–3, (i)2–3, and (j)1, STATS., 1979–80. Effective in 1984, the legislature amended § 20.923(15)(b), STATS., to remove the president of the University of Wisconsin System, the chancellor of the University of Wisconsin-Madison and the chancellor of the University of Wisconsin-Milwaukee, from the salary cap:

> Except for the positions of president of the university of Wisconsin system, chancellor of the university of Wisconsin-Madison and chancellor of the university of Wisconsin-Milwaukee, the pay of any incumbent in a position assigned to an executive salary group under this section may not equal or exceed that amount paid the governor. The pay of any incumbent in the position of president of the university of Wisconsin system, chancellor of the university of Wisconsin-Madison or chancellor of the university of Wisconsin-Milwaukee may not exceed the maximum dollar value of the salary range for the group to which the incumbent's position is assigned.

1983 Wis. Act 27, § 613 (eff. July 22, 1983).

The 1984 version of paragraph (15)(b) remained in place until 1990, when the version with the language at issue in this appeal took effect. *See* 1989 Wis. Act 336, § 57n (eff. May 11, 1989).[6] As a result, when this action

---

[6] Section 20.923(15)(b), STATS., was most recently amended by 1997 Wis. Act 237, § 57r (eff. June 17, 1998). Section 57r changed the exception for positions identified in sub (4)(j) to an exception for positions identified in sub (4g) to reflect the reorganization of the statute's treatment of university officials effected by §§ 57d and 57f of the same act, and also struck the last sentence. Neither change affects our analysis.

was commenced on December 12, 1997, § 20.923(15)(b), Stats., read:

> Except for the positions identified in sub (4)(j) and (4m), the pay of any incumbent whose salary is subject to a limitation under this section may not equal or exceed the amount paid the governor. . . .

The positions identified in § 20.923(4)(j)[7] and (4m),[8] Stats., 1989–90, were University of Wisconsin senior executive and system executive positions.

The same legislation which amended § 20.923(15)(b), Stats., in 1990 also removed the University of Wisconsin positions listed in § 20.923(5) from the executive salary group structure. *See* 1989 Wis. Act 336, § 57L (eff. May 11, 1990).[9] Removing the officials listed in § 20.923(5) from the salary structure would have removed them from the salary cap under the pre-1990 form of paragraph (15)(b). However, due to the

---

[7] Section 20.923(4)(j), Stats., 1989–90, assigned the University of Wisconsin System president, the University of Wisconsin-Madison chancellor, and the University of Wisconsin-Milwaukee chancellor to executive salary group 10.

[8] Prior to the enactment of 1989 Wis. Act 336 § 57k, § 20.923(4m), Stats., set the upper limitation on the salaries of the University of Wisconsin executive officials in that subsection as the maximum value of executive group ten. Section 20.923(4m), Stats., 1989–90, required the board of regents of the University of Wisconsin to set the salaries for certain university executive positions between the minimum dollar value in executive salary group 7 and the salary paid to the president of the University of Wisconsin System.

[9] 1989 Wis. Act 336 § 57L changed § 20.923(5), Stats., to allow the university board of regents to assign salary ranges for certain University of Wisconsin System administrative positions no higher than the maximum salary for executive group six.

108

simultaneous expansion of the application of paragraph (15)(b) from "executive salary groups" to "positions whose salaries are subject to a limitation" under § 20.923, the University of Wisconsin officials listed in § 20.923(5) who were subject to the salary cap before the 1990 amendments were still treated as being subject to the cap after the amendments, even though they were no longer assigned to executive salary groups.

From 1984 until 1997, both before and after the 1990 amendment to the salary cap, JCOER approved salaries for the chief justice which routinely exceeded the amount paid to the governor.[10] The salaries JCOER approved for the associate justices in 1993,

[10] The following chart submitted by the respondent shows the rates actually paid to the governor and justices between 1984 and 1997:

| SALARY | GOVERNOR | CHIEF JUSTICE | JUSTICE |
|--------|----------|---------------|---------|
| August 1984 | 75,337 | 75,500 | 68,000 |
| August 1985 | 75,337 | 78,520 | 70,720 |
| January 1987 | 86,149 | 82,054 | 73,903 |
| August 1987 | 86,149 | 85,336 | 76,859 |
| January 1990 | 86,149 | 91,829 | 82,706 |
| January 1991 | 92,283 | 91,829 | 82,706 |
| March 1991 | 92,283 | 93,514 | 86,014 |
| July 1991 | 92,283 | 96,319 | 88,594 |
| July 1992 | 92,283 | 99,210 | 91,252 |
| July 1993 | 92,283 | 102,906 | 94,906 |
| August 1994 | 92,283 | 105,756 | 97,756 |
| January 1995 | 101,861 | 105,756 | 97,756 |
| August 1995 | 101,861 | 108,690 | 100,690 |
| November 1997 | 101,861 | 114,967 | 106,967 |

1994 and 1997 also exceeded the amount paid to the governor.[11] *See* note 10, *supra*.

On August 13, 1997, DER's Secretary submitted to JCOER a proposed compensation plan for the 1997–99 legislative term. The plan included pay increases for the governor and judges.[12] On October 28, 1997, JCOER accepted the recommended salary for the governor, but modified DER's proposal so as to increase the pay for the chief justice, justices and judges to the following rates:

---

[11] In addition, the record includes a list of over 250 University of Wisconsin deans and faculty members whose salaries set under § 20.923(6)(m), STATS., exceed the governor's salary.

[12] DER's proposed plan would have increased the annual rate of pay for the governor to $110,188 for the period between November 2, 1997 and July 4, 1998, and to $115,699 for the fiscal year 1998–99; increased the annual rate of pay for the chief justice to $112,929 for the period between November 2, 1997 and July 4, 1998, and to $116,604 for the fiscal year 1998–99; increased the annual rate of pay for associate justices to $104,929 for the period between November 2, 1997 and July 4, 1998, and to $108,604 for the fiscal year 1998–99; increased the annual rate of pay for court of appeal judges to $98,988 for the period between November 2, 1997 and July 4, 1998, and to $102,457 for the fiscal year 1998–99; and increased the annual rate of pay for circuit court judges to $93,384 for the period between November 2, 1997 and July 4, 1998, and to $96,656 for the fiscal year 1998–99. Thus, DER itself proposed a salary for the chief justice which would have exceeded the governor's annual rate of pay.

| Position | Rate for 9/14/97–7/4/98 | Rate for Fiscal Year 1998–99 |
|---|---|---|
| Governor | $110,188 | $115,699 |
| Chief Justice | $114,967 | $120,318 |
| Associate Justice | $106,967 | $112,318 |
| Court of Appeals Judge | $100,911 | $105,960 |
| Circuit Court Judge | $ 95,199 | $ 99,961 |

The judicial pay increases as modified by JCOER would take effect on November 4, 1997, when a new judge took office.[13] Because Article IV, § 26(2) of the Wisconsin Constitution, prohibits raising the governor's salary during his term of office, Governor Thompson's rate of pay would remain at its existing level of $101,861 until the beginning of his new term on January 4, 1999. Thus, JCOER's modifications to DER's proposal would increase the rate of pay for the justices to amounts exceeding the governor's rate of pay between November 2, 1997 and January 4, 1999, and would increase the rate of pay for court of appeals judges to an amount exceeding the governor's rate of

[13] Article IV, § 26(2)(a) of the Wisconsin Constitution provides: "When any increase or decrease in the compensation of justices of the supreme court or judges of any court of record becomes effective as to any such justice or judge, it shall be effective from such date as to every such justice or judge." Section 20.923(3), STATS., provides: "The annual salary for any supreme court justice or judge of the court of appeals or circuit court shall be established under sub (2), except that any compensation adjustments granted under s. 230.12 shall not become effective until such time as any justice or judge takes the oath of office." The Hon. William Foust was sworn in as a Dane County circuit court judge on November 4, 1997, triggering the salary increases for all judges in the state.

pay between July 5, 1998 and January 4, 1999. The governor did not exercise his power under § 230.12(3), STATS., to disapprove JCOER's modifications to the compensation plan.

J. Denis Moran, the Director of State Courts, asked DOA to prepare to implement the new judicial salary rates effective November 4, 1997. DOA notified Moran that, at DER's direction, DOA would not implement the compensation adjustments for the supreme court and court of appeals. DER based its direction upon its interpretation of § 20.923(15)(b), STATS., as imposing a salary cap on judicial salaries. When DOA stood by its decision, Moran filed this declaratory judgment action. The trial court concluded that § 20.923(15)(b) does not apply to judges, and ordered the Departments to authorize and process payment of the judicial salaries JCOER had proposed in October 1997. The Departments' appeal followed.

## STANDARD OF REVIEW

The court of appeals and circuit court apply the same summary judgment methodology. Section 802.08, STATS.; *see also Morris v. Juneau County*, 219 Wis. 2d 543, 550, 579 N.W.2d 690, 692 (1998). We examine the complaint to determine whether it states a claim, and then review the answer to determine whether it joins issue. If the pleadings join an issue of law or fact, we examine the moving party's affidavits to determine whether they establish a prima facie case for summary judgment. If they do, we look to the opposing party's affidavits to determine whether there are material facts in dispute which require a trial. *Id.* We agree with the parties that the pleadings join issue and no material facts are disputed. Whether the salary cap provision of § 20.923(15)(b), STATS., applies to judicial

salaries is therefore an issue of law to be resolved without trial. *See, e.g., Minuteman, Inc. v. Alexander,* 147 Wis. 2d 842, 853, 434 N.W.2d 773, 778 (1989).

## ANALYSIS

■ The aim of all statutory interpretation is to determine the intent of the legislature. When ascertaining that intent, we first look to the language of the statute. If the statute unambiguously sets forth the legislative intent, we must apply its plain meaning. If the language of the statute is ambiguous, we must resort to judicial construction of it to ascertain and carry out the legislature's intent. *Berna-Mork v. Jones,* 174 Wis. 2d 645, 650–51, 498 N.W.2d 221, 223 (1993).

■ A statute is ambiguous "when it is capable of being understood by reasonably well-informed persons in either of two or more senses." *Wagner Mobil, Inc. v. City of Madison,* 190 Wis. 2d 585, 592, 527 N.W.2d 301, 303 (1994). Whether such persons could disagree is a question of law for our independent resolution. *St. John Vianney Sch. v. Board of Educ. of Sch. Dist. of Janesville.,* 114 Wis. 2d 140, 150, 336 N.W.2d 387, 391 (Ct. App. 1983). That the parties disagree does not demonstrate that ambiguity exists. We must "look to the language of the statute itself to determine whether 'well-informed' persons should have become confused." *National Amusement Co. v. Department of Revenue,* 41 Wis. 2d 261, 267, 163 N.W.2d 625, 628 (1969).

Each side claims that the plain language of the statute supports its position. The Departments assert that the salary cap plainly applies to all state positions mentioned in § 20.923, STATS., except for those specifically identified and excluded in subsections (4)(j) [now

(4g)] and (4m). Moran contends that the cap plainly applies only to the positions of those incumbents whose salary amount is limited by other provisions of § 20.923, and that no other provision in the statute limits the amount of judicial salaries.

■

We agree with Moran that the "subject to a limitation" language unambiguously restricts the application of the salary cap to only those positions mentioned in § 20.923, STATS., whose salaries are limited by the statute. Indeed, absent such an interpretation, the "subject to a limitation" clause would be rendered superfluous and the salaries of more than 250 university of Wisconsin deans and faculty members which are currently higher than the governor's would be rendered illegal. *See Gaertner v. Holcka*, 219 Wis. 2d 436, 451, 580 N.W.2d 271, 278 (1998) *and* note 11, *supra*.

The Departments maintain that the provisions in subsections (2) and (3), which set forth the method for determining judicial salaries, fulfill the limitation requirement in paragraph (15)(b). We conclude, however, that the term "salary" in paragraph (15)(b) plainly refers to the amount of fixed compensation paid for a particular position. A designation of the method for determining a salary is not the same as a limitation on a salary amount, to which paragraph (15)(b) is directed.

The Departments argue that interpreting the phrase "whose salary is subject to a limitation under this section" to mean the *amount* of whose salary is subject to a limitation under this section would lead to an absurd result, because the statute does not set forth the actual amount of salary for any position, but rather establishes salary-setting mechanisms for the positions which it covers. They claim the logical extension

of this interpretation would be to exclude *all* salaries covered under the statute from the salary cap.

We reject the Department's contention. It fails to distinguish between setting salary amounts and limiting them. A salary amount may be limited, not merely by a discrete maximum dollar figure, but also by reference to other salary amounts which it may not exceed. For example, paragraphs (2)(c) through (2)(j) limit the salary amounts of several constitutional officers to certain percentages "above the minimum of the salary range" for various executive salary groups, without setting the amounts of those salaries. No provision in § 20.923, STATS., limits the amounts of judicial salaries to specific dollar figures or by reference to other salaries.

The Departments and Governor nonetheless maintain that there are a number of provisions in § 20.923, STATS., which are limitations on judicial salary amounts. They point to: (1) § 20.923 (intro), STATS., which provides that the salary setting mechanisms set forth in that section for all elected officials, appointed state agency heads, division administrators and other executive-level unclassified positions "shall be directed to establishing salaries that are determined on a comprehensive systematic basis [and] bear equitable relationship to one another;" (2) § 20.923(2)(a), which provides that no salary adjustments are effective until authorized under article IV, section 26 of the Wisconsin Constitution; (3) § 20.923(2)(b), which provides that the salary of the chief justice of the Wisconsin Supreme Court shall be "different than" the salaries of the associate justices of that court; (4) § 20.923(3), which provides that judicial salaries shall not become effective until a judge or justice takes the oath of office; and (5) § 20.923(16), which prohibits judges and justices

from earning overtime pay or compensatory time under § 103.025. The Departments and Governor contend these are ways in which judicial salary amounts are subject to limitation under § 20.923. We will consider each of these provisions in turn.

The introductory paragraph of § 20.923, STATS., is a general policy statement. It is hardly a "limitation" on a "salary." Its emphasis is on the method for establishing salaries. It refers consistently to a "salary-setting mechanism." As we have noted, describing the mechanism by which salaries are determined does not limit the amounts of those salaries. Nor does the requirement that all salaries under the statute bear an equitable relationship to each other limit judicial salaries to an amount equal to or less than the governor's. Each branch of government is coequal. We see nothing in the introductory paragraph which dictates that supreme court justices must be paid less than the chief executive officer.

The manner in which paragraph (2)(a) and subsection (3) bar judicial salaries from taking effect until a new judge has taken the oath of office has nothing to do with the amounts of those salaries. It relates solely to the timing of the adjustments. Moreover, as paragraph (2)(a) implicitly recognizes, art. IV, § 26 of the constitution fixes the effective date of a salary adjustment, not § 20.923, STATS. To repeat a constitutional provision in § 20.923 is not a limitation imposed by that section. It is a requirement imposed by the constitution itself.

The provision in § 20.923(2)(b), STATS., that the annual salaries of justices and judges shall be reviewed and established in the same manner as provided for positions in the classified service is not a "limitation under" § 20.923. It refers to another statutory section in another chapter, § 230.12(3). The next sentence in

116

paragraph (2)(b) providing that the chief justice's salary shall be "different than" the salaries of the associate judges is not a limitation on any salary. It leaves the difference, whether with respect to amount or otherwise, wholly to future determination.

Finally, the prohibition in subsection (16) against a judge earning overtime pay and compensatory time under § 103.025, STATS., is not a limitation on a judge's "salary." Judicial salaries are annual. Section 20.923(3), STATS., so provides. A salary is the amount a judge may earn in one year. The prohibition in subsection (16) against overtime pay and compensatory time bars non-salary compensation to judges. It does not limit judicial salaries themselves.

We conclude the language of the statute unambiguously supports Moran's position that judicial salaries are not, in the words of § 20.923(15)(b), STATS., "subject to a limitation under this section." The Departments' insistence to the contrary is unreasonable in the context of § 20.923 as a whole. The Department's reading would equate largely administrative salary-setting mechanisms with substantive salary limitations, contrary to the plain words of the statute. Moreover, it would ignore the circumstances surrounding the legislature's amendment of paragraph (15)(b) in 1990, and JCOER's subsequent application of the salary cap.

Legislative history cannot be used to create an ambiguity in otherwise plain statutory language. *See Johnson v. County of Crawford*, 195 Wis. 2d 374, 383, 536 N.W.2d 167, 170 (Ct. App. 1995). However, we may look to legislative history to "re-enforce and demonstrate that a statute plain on its face, when viewed historically, is indeed unambiguous." *Kerkvliet v. Kervliet*, 166 Wis. 2d 930, 939, 480 N.W.2d 823, 826 (Ct. App. 1992); *State v. Martin*, 162 Wis. 2d 883, 897 n.5,

470 N.W.2d 990, 995 n.5 (1991). There is ample legislative history to support our plain reading of the statute.

A problem with the 1989–90 version of § 20.923(5), STATS., arose when a group of university officials who had been subject to the salary cap were removed from the executive salary group structure. To ensure that the officials listed in subsection (5) would still be subject to the salary cap, it was necessary to expand the application of the cap from the executive salary groups to all positions subject to limitation under the section, thus covering the removed group. There is no indication that when expanding the application of the salary cap, the legislature attempted to address judicial salaries. Judicial salaries had been explicitly removed from the executive salary groups and from the salary cap in 1984. The context in which the 1990 salary cap amendment was adopted persuades us that it was not intended to change the treatment of judicial salaries, and supports our plain reading of the statute.

Equally persuasive extrinsic evidence supporting our reading of paragraph (15)(b) is the practical interpretation which JCOER has given the 1990 salary cap amendment by routinely approving proposed judicial salaries in excess of the salary paid to the governor over the years since the amendment's adoption. *See* note 10, *supra*. JCOER is an extraordinary committee composed of highly placed legislators. It reviews DER's proposed salary plans. It performs the functions assigned to it under part II of ch. 230 and § 20.923, STATS., among other statutes. Section 20.923(2)(b) provides for the establishment of judicial salaries in the same manner as provided for positions in the classified service under § 230.12(3), STATS. Under the provisions of the latter section, the Secretary of DER must submit a proposal for changes in the compensation plan to

118

JCOER, which must hold a public hearing on the proposal. JCOER may not only modify the Secretary's proposed plan, but may even override the governor's disapproval of its modifications. Thus, JCOER is intimately connected with the statutory salary-setting mechanism for the judiciary and has been for years. And JCOER has for years approved judicial salaries exceeding the amount paid to the governor. *See* note 10, *supra*. Practical constructions frequently ratified and approved by branches of the government without objection over a period of years are entitled to great weight. *See State ex rel. Hudd v. Timme*, 54 Wis. 318, 341, 11 N.W. 785, 793 (1882).

Furthermore, JCOER approved a salary for the chief justice exceeding the salary to be paid to the governor in the very same session that the "subject to a limitation" language in § 20.923(15)(b), STATS., became effective.[14] "The contemporaneous construction and official interpretation given a statute by those responsible for its administration may be used in ascertaining legislative intent," and should be "given special consideration since it was made at a time when the circumstances leading up to the enactment of the statute were well known." *Layton Sch. of Art & Design v. Wisconsin Employment Relations Comm'n*, 82 Wis. 2d 324, 340 n.12, 262 N.W.2d 218, 226 n.12 (1978); 2B SUTHERLAND STAT. CONST. § 49.08 (5th ed.); *see also Marsh v. Chambers*, 463 U.S. 783, 790 (1983); *Myers v. United States*, 272 U.S. 52, 175 (1926); *Dean v. Borchsenius*, 30 Wis. 236 (1872); *and State ex rel. Pluntz v. Johnson*, 176 Wis. 107, 186 N.W. 729, 730 (1922) (all

_____

[14] The "subject to a limitation" amendment to the salary cap took effect on May 11, 1990. *See* 1989 Wis. Act 336, § 57n. In 1990, the chief justice earned $91,829, and the governor earned $86,149. *See* note 10, *supra*.

granting great deference to contemporaneous legislative construction of constitutional provisions).

Given JCOER's composition and unique statutory involvement in the process for setting salaries, JCOER's actions support our conclusion that § 20.923(15)(b), STATS., applies only to positions whose salary amounts are limited in the statute. The unambiguous language of the statute satisfies us that judicial salaries are not subject to a limitation under § 20.923. The salary cap provision in paragraph (15)(b) does not apply to those salaries.

*By the Court.*—Order affirmed.