IN the INTEREST OF ISAAC J.R., a person under the age of 18:

STATE of Wisconsin, Plaintiff-Respondent,

v.

ISAAC J.R., Defendant-Appellant.

Court of Appeals

No. 97–1611. *Submitted on briefs April 8, 1998.—Decided May 21, 1998.*

(Also reported in 582 N.W.2d 476.)

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Susan E. Alesia*, assistant state public defender.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Timothy C. Baxter*, Crawford County District Attorney, of Prairie du Chien.

Before Vergeront, Deininger and Nowakowski,[1] JJ.

VERGERONT, J.   On this appeal we decide the correct interpretation and application of the statute concerning habitual truants, § 118.16(1)(a), STATS., which is one basis for finding a child in need of protection and services under the Juvenile Justice Code. Isaac J.R., a minor, appeals a trial court order adjudging him a child in need of protection and services under

---

[1] Circuit Judge Michael Nowakowski is sitting by special assignment pursuant to the Judicial Exchange Program.

§ 48.13, STATS., 1993–94,[2] because he was habitually truant within the meaning of § 118.16(1)(a).[3] Isaac J.R. contends that he was not "absent from school without an acceptable excuse" within the meaning of § 118.16(1)(a) for ten or more days during the school semester because seven of his fifteen absences were due to suspensions, and suspensions are not unexcused absences within the meaning of the statute when the definition of "truancy" in § 118.16(1)(c) is considered.[4]

[2] At the time the events occurred, § 48.13(6), STATS., 1993–94, provided:

Jurisdiction over children alleged to be in need of protection or services. The court has exclusive original jurisdiction over a child alleged to be in need of protection or services which can be ordered by the court, and:

. . . .

(6) Who is habitually truant from school, after evidence is provided by the school attendance officer that the activities under s. 118.16(5) have been completed, except as provided under s. 48.17 (2);

That section is now found at § 938.13(6), STATS., part of the Juvenile Justice Code, 1995 Wis. Act 77, effective January 1, 1996.

[3] All references to statutes are to 1995–96 STATS., unless otherwise indicated.

[4] Section 118.16(1)(a) and (c), STATS., provide:

School attendance enforcement. (1) In this section:

(a) "Habitual truant" means a pupil who is absent from school without an acceptable excuse under sub. (4) and s. 118.15 for either of the following:

1. Part or all of 5 or more days out of 10 consecutive days on which school is held during a school semester.

2 Part or all of 10 or more days on which school is held during a school semester.

. . . .

(c) "Truancy" means any absence of part or all of one or more days from school during which the school attendance officer, principal or teacher has not been notified of the legal cause of such absence by the parent or guardian of the absent pupil, and also

We conclude that the trial court correctly interpreted the definition of habitual truancy to include days on which Isaac J.R. was absent from school due to suspensions. We therefore affirm.

The relevant facts are undisputed. Isaac J.R. attended the fifth grade during the 1995–96 school year at North Crawford Elementary School. The attendance policy in the SCHOOL BOARD POLICY HANDBOOK lists seven bases for excused absences from school: sickness, medical appointments, driver's exams, home emergencies, pre-arranged family vacation, farm work on family farm and "other good cause as shown in advance to the attendance officer or designee." This same definition of excused absences is included in the PARENT/STUDENT HANDBOOK for the elementary school, which is handed out at the beginning of the school year. For the first semester of the school year, Isaac J.R. had fifteen unexcused absences. Seven of those absences were due to suspensions because of disciplinary problems. These absences were considered unexcused by the school because suspension is not among the seven listed reasons for excused absences.

---

means intermittent attendance carried on for the purpose of defeating the intent of s. 118.15.

Section 118.16(5), STATS., requires that the school take certain steps before any court action relating to a child's absence from school; and § 118.16(6) provides that if the school attendance officer receives evidence that those steps have been taken, or cannot be taken because of the child's absence from school, the officer may file any information on any child who continues to be truant with the court assigned to exercise jurisdiction under Chapters 48 and 938, STATS. Issues of compliance with subsections of § 118.16 other than subsec. (1) were raised before the trial court, but are not before us on appeal.

The trial court determined that Isaac J.R. was a habitual truant as defined by § 118.16(1)(a), STATS., because he was "absent from school without an acceptable excuse" for ten or more days during the semester. The court concluded that suspensions were not "an acceptable excuse" within the meaning of that section. The court rejected Isaac J.R.'s argument that he was not a habitual truant because the suspensions were not "truancy" within the meaning of § 118.16(1)(c) and his eight other absences were then insufficient to meet the numerical requirements of both § 118.16(1)(a)1 and 2. Paragraph (c) defines "truancy" as "any absence during which the school attendance officer, principal or teacher has not been notified of the legal cause of such absence by the parent or guardian of the absent pupil. . . ." Isaac J.R. argued to the trial court, as he does on this appeal, that because the school had notice of the suspensions, the suspensions were not "truancy."

██

Construction of a statute, or its application to a particular set of facts, is a question of law, which we review without deference to the trial court decision. *Minuteman, Inc. v. Alexander*, 147 Wis. 2d 842, 853, 434 N.W.2d 773, 778 (1989). However, despite our de novo standard of review, we benefit from the trial court's analysis. *Scheunemann v. City of West Bend*, 179 Wis. 2d 469, 475, 507 N.W.2d 163, 165 (Ct. App. 1993).

██

The aim of statutory construction is to ascertain the intent of the legislature, and our first resort is to the language of the statute itself. *Kelley Co. v. Marquardt*, 172 Wis. 2d 234, 247, 493 N.W.2d 68, 74 (1992). If the words of the statute convey the legislative intent, that ends our inquiry. We will not look beyond the plain

language of a statute to search for other meanings; we will simply apply the language to the case at hand. *Id.* However, if the language of the statute is ambiguous or unclear, the court examines the scope, history, context, subject matter and the object of the statute in order to ascertain the intent of the legislature. *Ball v. District No. 4, Area Bd.*, 117 Wis. 2d 529, 538, 345 N.W.2d 389, 394 (1984). A statute is ambiguous when it is capable of being understood by reasonably well-informed persons in two or more different senses. *State v. Martin*, 162 Wis. 2d 883, 894, 470 N.W.2d 900, 904 (1991).

Isaac J.R. argues that § 118.16(1), STATS., is ambiguous because it offers conflicting definitions of "habitual truant" and "truancy"—with "habitual truant" including absences without an acceptable excuse, and "truancy" including only those absences where the parent or guardian has not notified the school of "the legal cause" of such absence. This ambiguity, Isaac J.R. contends, can only be resolved by using the definition of "truancy" in para. (c) as the definition of "truant" in para. (a). Isaac J.R. claims that this is justified because para. (c) is more specific than para. (a). Thus, according to Isaac J.R., para. (a) defines "habitual" by specifying the number of absences, but the definition of "truant" comes from para. (c). If this is not done, Isaac J.R. continues, then para. (c) has no function.

Isaac J.R. also argues that his interpretation avoids an unreasonable result: once a child is suspended, the child cannot come to school without facing further disciplinary action, so the child will face a juvenile proceeding for habitual truancy even if the child wants to go to school. In Isaac J.R.'s view, the trial court's interpretation may encourage schools to suspend difficult students and then treat them as habitual truants, rather than addressing the student's

problems, another unreasonable result according to Isaac J.R.

We do not agree that the language of § 118.16(1)(a), STATS., is ambiguous because of a conflict with para. (c). Rather, we conclude that the language of § 118.16(1)(a) is clear, there is no conflict with para. (c), and the trial court correctly concluded that Isaac J.R. was a habitual truant within the meaning of § 118.16(1)(a).

We start with § 48.01(9m), STATS., 1993–94 (now found at § 938.02(9m), STATS.), which defines "habitually truant" under § 48.13(6), STATS., 1993–94, as "a child who is a habitual truant as defined under s. 118.16(1)(a)." Section 118.16(1)(a), STATS., defines a habitual truant as a pupil "absent from school without an acceptable excuse under subd. 4 and s. 118.15" for the requisite number days within the requisite time period. Subdivision (4) requires a school board to establish "a written attendance policy specifying the reasons for which pupils may be permitted to be absent from a public school under s. 118.15. . . ." Section 118.15, STATS., requires persons who have control of children to cause the children to attend school regularly, with certain exceptions. One of the exceptions, contained in § 118.15(3)(b), is a child excused by the school board's written attendance policy under § 118.16(4). Section 118.15(3)(b) continues: "[T]he child's truancy, discipline, or school achievement problems or exceptional educational needs . . . may not be used as an excuse under this paragraph."

Isaac J.R. appears to concede that, if § 118.16(1)(a), STATS., is read without reference to para. (c), it is plain that a suspension is not an "acceptable excuse for an absence." This is plain because a suspension is not an excused absence under the school board

policy adopted in conformity with §§ 118.15(3)(b) and 118.16(4), STATS.

Isaac J.R.'s argument assumes it is necessary to refer to § 118.16(1)(c), STATS., in interpreting § 118.16(1)(a). We disagree. Sections 48.13(6) and 48.01(9m), STATS., 1993–94, refer only to § 118.16(1)(a). There is no reason to look beyond the definition of "habitual truant" in para. (a). Nothing in the definition of "habitual truant" refers to para. (c), and there is no incompleteness or lack of clarity in the definition of "habitual truant" that makes reference to another section necessary.

However, even if we were to assume for purposes of argument that para. (c) should be considered, that does not change our construction of para. (a) or the ultimate result. "Truancy" under para. (c) is an absence from school together with: (1) lack of notification by the parent or guardian to the school, and (2) legal cause for the absence. Isaac J.R.'s argument that this conflicts with the definition in para. (a) is based on a failure to give meaning to all the language in para. (c). Isaac J.R. argues that when an absence is due to a suspension, the notice requirement has been met because the school obviously knows of the suspension. However, the notification required is "of the legal cause" for the absence. We conclude that a suspension that is not defined as an excused absence under a school board's policy under §§ 118.16(4) and 118.15(3), STATS., is not a "legal cause" within the meaning of § 118.16(1)(c). Thus, there is no conflict between the two paragraphs, and no ambiguity even if we consider both paragraphs in interpreting para. (1)(a).

■ Because we conclude that the language of § 118.16(1)(a), STATS., is plain, our analysis of the stat-

ute stops. We need not and do not discuss Isaac J.R.'s arguments about the unreasonable results of the plain language of the statute, because those are essentially policy arguments and must be addressed to the legislature. We hold that the trial court correctly decided that Isaac J.R.'s suspensions were not acceptable excuses under § 118.16(1)(a) and he was therefore a habitual truant.

 *By the Court.*—Order affirmed.