IN RE the PATERNITY OF NOAH J.M.:

STATE of Wisconsin, Petitioner,

LINDA M.M., Petitioner-Appellant,

v.

CHARLES R.P., Respondent-Respondent.

Court of Appeals

*No. 97–2353. Submitted on briefs December 1, 1998.—Decided December 29, 1998.*

(Also reported in 590 N.W.2d 21.)

On behalf of the petitioner-appellant, the cause was submitted on the brief of *Pamela A. Captain,* of Elkhorn.

On behalf of the respondent-respondent, the cause was submitted on the brief of *Cheryl P. Baraty,* of *Polansky & Baraty, S.C.,* of Milwaukee.

Before Wedemeyer, P.J., Schudson and Curley, JJ.

SCHUDSON, J. Linda M. M. appeals from the trial court order, issued in a paternity action, granting the request of Charles R. P. to change the surname of their son, Noah J. M. Linda argues, *inter alia,* that the trial court had no statutory authority to order the name change in a paternity action. Linda is correct and, therefore, we reverse.

## I. BACKGROUND

The factual background is undisputed. On August 6, 1995, Linda, who was unmarried, gave birth to Noah. She named Noah, giving him her surname. On January 4, 1996, Linda filed a paternity action alleging that Charles was Noah's father. Charles initially denied paternity but, after receiving blood test results, acknowledged that he was Noah's father, and judgment of paternity was entered.

In the course of the paternity proceedings, Charles requested that the court change Noah's surname to his own. The parties submitted briefs on two issues: (1) whether the court had authority to order a name change in a paternity action; and (2) whether it was in Noah's best interest to have his surname changed from

770

his mother's to his father's. The trial court concluded that, under the authority of §§ 767.46(2)(c) and 767.51(3), STATS., and the dissenting opinion in *Steinbach v. Gustafson*, 177 Wis. 2d 178, 502 N.W.2d 156 (Ct. App. 1993), it had authority to change Noah's surname upon his father's request. The trial court's written order further declared:

> The Court finds a change in the surname of the minor child . . . is in the best interests of the child based on the following factors: 1) the efforts that have been expended by the father in pursuing a name change; 2) an indication that the father is current in his support of the minor child; 3) the father has an interest in his child to the extent of wanting the child to have his surname; 4) this result will hopefully result in a positive working relationship between the parents; and 5) the lack of involvement of the fathers in today's society in their children's lives.

(Citations omitted.) We conclude, however, that the court had no authority to change Noah's surname upon his father's request, absent compliance with § 786.36, STATS., and absent the agreement of Noah's mother.

## II. ANALYSIS

"The trial courts in paternity actions are limited to the authority provided in the paternity statutes." *State v. R. R. R.*, 166 Wis. 2d 306, 312, 479 N.W.2d 237, 239 (Ct. App. 1991). The interpretation of a statute presents a question of law, which we review *de novo*. *See State v. William W.*, 180 Wis. 2d 708, 713, 510 N.W.2d 718, 720 (Ct. App. 1993). If the terms of the statute are clear and unambiguous, we apply them as written, without further inquiry into their meaning.

*See id.* A statute is clear and unambiguous if no more than one reasonable meaning can be attributed to it. *See id.*

In the instant case, the trial court relied on two statutes, neither of which provides authority for the name change. As the basis for its "best interests" authority, the trial court first invoked § 767.46(2)(c), STATS., which provides:

> (2) On the basis of the information produced at the pretrial hearing, the court shall evaluate the probability of determining the existence or nonexistence of paternity in a trial and shall so advise the parties. On the basis of the evaluation, the court may make an appropriate recommendation for settlement to the parties. This recommendation may include any of the following: . . . .
> (c) If the alleged father voluntarily acknowledges paternity of the child, that he agree to the duty of support, the legal custody of the child, periods of physical placement of the child and other matters as determined to be in the best interests of the child by the court.

That statute, however, is inapplicable for at least three reasons. First, it does not relate to final paternity judgments; rather, it falls within the section addressing pretrial paternity proceedings. *See* § 767.46, STATS. Second, it does not relate to what a paternity judgment may order; it provides only for what the pretrial court may recommend for the parties' consideration. Third, it does not even allow for "best interest" recommendations unless "the alleged father voluntarily acknowledges paternity" and agrees to other specified conditions; here, at the pretrial phase, Charles denied paternity.

772

■

The trial court next invoked § 767.51(3), STATS., and its "best interest" reference. In relevant part, § 767.51(3), provides:

> The [paternity] judgment or order may contain any other provision directed against the appropriate party to the proceeding, concerning the duty of support, the legal custody and guardianship of the child, periods of physical placement, the furnishing of bond or other security for the payment of the judgment, or any other matter in the best interest of the child.

An order changing a child's surname, however, is not a "provision directed against" any party in a paternity action. Moreover, even if by some sort of syntactical stretch one could extend the "best interest" reference of § 767.51(3) to potentially include name change authority, that potential authority would be trumped by the specific statutes establishing the authority to name a child, and establishing the authority and procedure for changing the name of a child. *See Milwaukee v. Kilgore*, 193 Wis. 2d 168, 185, 532 N.W.2d 690, 696 (1995) (when a general statute and a specific statute are compared, the specific statute takes precedence).

Section 69.14(1)(f)1.c, STATS., governing the registration of births and the naming of a child (the "registrant") born to an unmarried mother, in relevant part provides:

> If the mother of a registrant of a birth certificate under this section is not married to the father of the registrant at any time from the conception to the birth of the registrant, the given name and surname which the mother of the registrant enters for the registrant on the birth certificate shall be the

given name and surname filed and registered on the birth certificate[.]

In this case, it is undisputed that Noah was given Linda's surname, and that her surname was properly filed and registered as his. Thus, in our analysis, only one question remains: How could Noah's surname be changed? Section 786.36, STATS., governing the changing of names, provides the answer. In relevant part, it states:

Any resident of this state, whether a minor or adult, may upon petition to the circuit court of the county where he or she resides and upon filing a copy of the notice, with proof of publication, as required by s. 786.37, if no sufficient cause is shown to the contrary, have his or her name changed or established by order of the court. *If the person whose name is to be changed is a minor under the age of 14 years, the petition may be made by: both parents, if living, or the survivor of them; . . . or the mother, if the minor is a nonmarital child who is not adopted or whose parents do not subsequently intermarry under s. 767.60, except that the father must also make the petition unless his rights have been legally terminated.*

(Emphasis added.)[1]
██

Charles requested Noah's name change in the paternity proceedings, but he did not comply with the procedural requirements of § 786.36, STATS. Although § 69.15(1), STATS.,[2] authorizes the state registrar to change a name on a birth certificate based on a pater-

---

[1] Although inapplicable in this case, *see also* § 69.15(4m), STATS., governing change of name without court order within one year of birth.

[2] Section 69.15(1), STATS., provides:

nity order that provides for a name change, it does not eliminate the procedural protections of § 786.36. Moreover, under the express terms of § 786.36, even if Charles had complied with the statute, Linda would have had to have joined in Charles' request for it to have been granted. Thus, absent Charles' compliance with the procedural requirements of § 786.36, and absent Linda's agreement to join in Charles' request, the trial court had no authority to change Noah's name.[3]

**69.15 Changes of fact on birth certificates. (1)** BIRTH CERTIFICATE INFORMATION CHANGES. The state registrar may change information on a birth certificate registered in this state which was correct at the time the birth certificate was filed under a court or administrative order issued in this state, in another state or in Canada or under the valid order of a court of any federally recognized Indian tribe, band or nation if:

(a) The order provides for an adoption, name change or name change with sex change or establishes paternity; and

(b) A clerk of court sends the state registrar a certified report of an order of a court in this state on a form supplied by the state registrar or, in the case of any other order, the state registrar receives a certified copy of the order and the proper fee under s. 69.22.

[3] The trial court's additional reliance on the *dissenting* opinion in *Steinbach v. Gustafson*, 177 Wis. 2d. 178, 502 N.W.2d 156 (Ct. App. 1993), provides Charles with scarce support. Not only is *Steinbach* distinguishable in many respects but, more importantly, in *Steinbach*, the *majority* affirmed the trial court's conclusion, in a paternity action, "that it lacked authority to order the child's name to be changed." *Id.* at 183, 502 N.W.2d at 158.

Although we base our holding on strict statutory application, we do not mean to imply that the trial court's "best interest" determination otherwise would have been upheld. Indeed, we understand why Linda so strenuously challenges each of the five grounds on which the trial court based its "best interest" conclusion.

*By the Court.*—Order reversed.