In the MATTER OF the GUARDIANSHIP OF EMMA W.:
FAMILY SERVICES, INC. OF BARRON COUNTY, Appellant,

v.

GARY W. and Paul W., Respondents.

Court of Appeals

*No. 02–3139–FT. Submitted on briefs March 26, 2003.—Decided May 28, 2003.*

2003 WI App 132

(Also reported in 666 N.W.2d 84.)

On behalf of the appellant, the cause was submitted on the briefs of *Peter E. Grosskopf* of *Grosskopf & Black, LLC*, Eau Claire.

On behalf of the respondents, the cause was submitted on the brief of *Alan L. Sykes* of *Sykes Law Office*, Rice Lake.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. PETERSON, J.   Family Services, Inc. of Barron County, guardian of Emma W., appeals an order denying its request to recover funds that had been held in joint accounts by Emma and her sons, and ordering

the sale of her real estate.[1] Family Services argues: (1) the appointment of a guardian precludes the co-owners of joint accounts from removing the ward's funds; (2) it should have been allowed to present evidence of Emma's intent to prohibit withdrawal by the co-owners; and (3) the court should have permitted Family Services to mortgage Emma's home rather than requiring it to sell the home. We reject Family Service's first argument. However, we agree with its second argument and remand to the trial court for a hearing regarding Emma's intent with respect to the joint accounts. The trial court may at that time reconsider the sale of the real estate depending on the outcome of the hearing. We therefore reverse the order for sale for later reconsideration.

## BACKGROUND

¶ 2. Family Services was appointed Emma's guardian in January 2002. It submitted a general inventory, which listed certificates of deposit (CDs) held jointly by Emma and her sons, Paul and Gary. The combined amount of the CDs was $103,590. In June 2002, Family Services received notice through the sons' attorney that the sons had cashed the CDs. Emma's remaining assets consisted of a solely owned account with less than $12,000 and her home, valued at $161,700.

¶ 3. Family Services filed a petition requesting return of the funds. from the CDs. At the hearing, Family Services produced Emma's will, which provided a specific bequest of her home to Paul Wilson, a family friend, with the residue to be divided between Emma's

---

[1] This is an expedited appeal under WIS. STAT. RULE 809.17. All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

sons, Paul and Gary. Family Services argued that removing the funds altered Emma's estate plan and constituted a divestment for medical assistance purposes. Family Services also showed that Paul Wilson was currently living in Emma's home and paying rent, and requested that he be permitted to continue renting the home. Family Services asked to be allowed to mortgage the home to pay for Emma's nursing home care. This request was supported by Emma's guardian ad litem.

¶ 4. The trial court held that, as joint owners, Emma's sons, Paul and Gary had full authority to withdraw the funds. The court took no evidence of Emma's intent regarding the joint accounts at the hearing. The court also ordered Emma's home sold to pay for her care, rather than allow it to be mortgaged. Family Services appeals.

## STANDARD OF REVIEW

¶ 5. Resolution of the issues in this appeal turns on the interpretation of statute, which presents a question of law we review independently. *State v. Isaac J.R.*, 220 Wis. 2d 251, 255, 582 N.W.2d 476 (Ct. App. 1998). If the terms of a statute are clear and unambiguous, we apply them as written, without any further inquiry into their meaning. *State v. Charles R.P.*, 223 Wis. 2d 768, 771–72, 590 N.W.2d 21 (Ct. App. 1998).

## DISCUSSION

¶ 6. WISCONSIN STAT. § 880.19[2] requires a guardian to protect and preserve the ward's funds, while WIS.

---

[2] WISCONSIN STAT. § 880.19(1) provides:

STAT. § 705.03[3] permits the joint owner of a bank account to withdraw all the funds in the account. Family Services contends these statutes conflict because a guardian cannot protect and preserve a ward's funds if joint owners are able to remove funds from the accounts. Family Services also argues that public policy supports preserving the ward's assets over enforcing a joint owner's ability to withdraw funds.

██

¶ 7.   However, Family Services cites no authority stating that imposing a guardianship supercedes the rights of a joint owner of an account. In fact, WIS. STAT.

---

GENERAL DUTIES. The guardian of the estate shall take possession of all of the ward's real and personal property, and of rents, income, issues and benefits therefrom, whether accruing before or after the guardian's appointment, and of the proceeds arising from the sale, mortgage, lease or exchange thereof. Subject to such possession the title of all such estate and to the increment and proceeds thereof shall be in the ward and not in the guardian. It is the duty of the guardian of the estate to protect and preserve it, to retain, sell and invest it as hereinafter provided, to account for it faithfully, to perform all other duties required of the guardian by law and at the termination of the guardianship to deliver the assets of the ward to the persons entitled thereto.

[3] WISCONSIN STAT. § 705.03 provides:

Unless there is clear and convincing evidence of a different intent:

(1) A joint account belongs, during the lifetime of all parties, to the parties without regard to the proportion of their respective contributions to the sums on deposit and without regard to the number of signatures required for payment. The application of any sum withdrawn from a joint account by a party thereto shall not be subject to inquiry by any person, including any other party to the account and notwithstanding such other party's minority or other disability, except that the spouse of one of the parties may recover under s. 766.70. No financial institution is liable to the spouse of a married person who is a party to a joint account for any sum withdrawn by any party to the account unless the financial institution violates a court order.

§ 705.03 clearly states otherwise. The statute provides that unless there is evidence of different intent, "The application of any sum withdrawn from a joint account by a party thereto shall not be subject to inquiry by any person, including any other party to the account and notwithstanding such other party's minority or other disability . . . ." First, a guardianship is an "other disability." Second, and more importantly, WIS. STAT. § 705.01 defines a "party" as including a guardian "unless the context indicates otherwise." A guardian, therefore, steps into the shoes of the ward and cannot prevent another party from withdrawing funds from a joint account. As a result, the mere fact that a guardianship is established does not preclude a joint owner of an account from removing the funds.[4]

¶ 8.    Family Services also argues that the court erred by not allowing it to present evidence of Emma's intent not to permit her sons to withdraw funds from the accounts. It relies on WIS. STAT. § 705.03, which provides that co-owners may remove funds from a joint account "[u]nless there is clear and convincing evidence of a different intent."

¶ 9.    Paul and Gary do not appear to argue that a guardian should not be allowed to present evidence of contrary intent. Instead, they contend that Family Services had the opportunity to introduce evidence of intent but did not. They state: "The Guardian can not on appeal, now complain that the trial court erred because the Guardian neglected to call witnesses at its

---

[4] This issue was also discussed in *Randall v. Felt*, 2002 WI App 157, ¶¶ 14–15, 256 Wis. 2d 563, 647 N.W.2d 157 (citing *Wachniak v. Frank*, 140 Wis. 2d 429, 410 N.W.2d 621 (Ct. App. 1987)).

own motion." They also argue the facts regarding creation and termination of the joint accounts and guardianship are not contested.

¶ 10. At the hearing, however, Family Services asserted there were some factual issues that would require an evidentiary hearing. The trial court was not prepared to hold the hearing at that time, stating, "I don't think there is anything else we can do today." Family Services did not neglect to present evidence of intent. Instead, the court was not prepared to conduct an evidentiary hearing at the time of the hearing. We conclude Family Services should be given the opportunity to present evidence. We therefore remand to the trial court for an evidentiary hearing on Emma's intent.

*By the Court.*—Order reversed and cause remanded with directions.