KLEEWOOD, INC., d/b/a Global Recruiters of Milwaukee, Plaintiff-Respondent,

v.

HART DESIGN & MFG., INC., Defendant-Appellant.

Court of Appeals

*No. 2006AP416. Submitted on briefs October 3, 2006.
—Decided November 21, 2006.*

2006 WI App 264

(Also reported in 727 N.W.2d 87.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Jeffrey J. Gilson* of *Kaftan, Van Egeren & Gilson, S.C.*, Green Bay.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Lydia J. Chartre* of *Petrie & Stocking S.C.*, Milwaukee.

Before Wedemeyer, P.J., Curley and Kessler, JJ.

¶ 1. WEDEMEYER, P.J.   Hart Design & Mfg., Inc. (Hart) appeals from a judgment granting summary judgment in favor of Kleewood, Inc., d/b/a Global Recruiters of Milwaukee (Global). Hart claims the trial court erred in ruling that Global's employment recruiting fee agreement was not illegal and void due to Global's failure to timely register as an employer-paid fee employment recruiting agent under Wis. Stat. §§ 105.05(1) and 105.06(2) (2003–04).[1] Because Global's fee agreement with Hart for the placement of a sales representative was not void or illegal, but rather fully enforceable, we affirm.

## BACKGROUND

¶ 2.   Global is a Milwaukee business engaged in recruiting and placing employment candidates with hiring employers. Global is paid directly by the employer for the successful placement of an employee. Global commenced its business in May 2003. On May 31, 2003, it sent a $5 check to the Equal Rights Division of the Department of Work Force Development (DWD) for the business's registration fee pursuant to Wis. Stat. §§ 105.01(1) and 105.06(2).

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

¶ 3. On December 8, 2004, Global executed a fee agreement for the placement of a sales representative with Hart, a Green Bay based company. Global placed a sales representative with Hart who started working on March 1, 2005. The terms of the agreement provided that Hart was to pay Global a fee equal to 30% of the candidate's first year compensation; i.e. $23,400 within ten days after the candidate's starting date. Hart did not pay the fee within the ten-day period. The fee agreement also contained a guarantee by which Global will replace a candidate if he or she is terminated before the expiration of thirty days. On April 15, 2005, the sales representative quit his job at Hart. Additional provisions of the fee agreement provided that if the fee was not paid within the ten-day period, it invalidated the replacement guarantee. It also provided that Hart agreed to pay all costs of collection of the fee, including reasonable attorney's fees, if collection activities became necessary.

¶ 4. When Hart refused to pay the agreed upon fee, Global filed a breach of contract action and, in the alternative, an action for account stated. Hart filed an answer denying liability because Global was not registered or licensed as required by Chapter 105 of the Wisconsin Statutes. The parties filed cross-motions for summary judgment. The trial court granted Global's motion. Hart now appeals.

## ANALYSIS

¶ 5. Hart claims the trial court erred in granting Global summary judgment because the fee agreement it had with Global was illegal and void due to Global's delinquency in registering as an employer-paid agent pursuant to Wis. Stat. §§ 105.05(1) and 105.06(2).

## STANDARDS OF REVIEW AND APPLICABLE LAW

¶ 6.  We review orders for summary judgments independently, employing the same methodology as the trial court. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). We do value any analysis that the trial court has placed in the record. *Atkins v. Swimwest Family Fitness Ctr.*, 2005 WI 4, ¶ 11, 277 Wis. 2d 303, 691 N.W.2d 334. We shall affirm the trial court's decision granting summary judgment if the record demonstrates that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2).

¶ 7.  The summary judgment granted here involves the interpretation and application of Wisconsin Statutes. The interpretation of a statute is a question of law which we review independently. *County of Dodge v. Michael J.K.*, 209 Wis. 2d 499, 502, 564 N.W.2d 350 (Ct. App. 1997). The purpose of statutory construction is to ascertain the legislature's intent. *State v. Isaac J.R.*, 220 Wis. 2d 251, 255, 582 N.W.2d 476 (Ct. App. 1988). Our first resort is to the statutory language itself. *Id.* Our inquiry ends if the legislature's intent is clear from the plain words of the statute. *Id.*

¶ 8.  As pertinent to our examination of the issue before us, the following statutes of Chapter 105 apply:

**105.01 Definitions.** As used in this chapter:

**(1)** "Employment agent" means all persons who furnish to persons seeking employment, information enabling or tending to enable such persons to secure the same, or who furnish employers seeking laborers or other help of any kind, information enabling or tending

to enable such employers to secure such help, or who keep a register of persons seeking employment or help as aforesaid, whether such agents conduct their operations at a fixed place of business, on the streets or as transients, and also whether such operations constitute the principle business of such agents or only a sideline or an incident to another business. Employment agent does not include:

. . . .

(f) A person whose fees or charges are paid entirely by an employer.

. . . .

**105.05 Agent's license. (1)** No person may engage in the business of an employment agent for profit, or receive any fee . . . without first having obtained a license from the department and executing a bond under s. 105.06 (1). No person whose fees or charges are paid directly by employers may engage in the business specified in s. 105.01 (1) (intro.) without registering under s. 105.06 (2). The license constitutes permission from this state to operate as an employment agent for compensation. It is not transferable to or for the benefit of any person other than the licensee. A person licensed under this section shall not transact business as an employment agent at more than one office location or place of business without having first obtained from the department a separate license for each additional office in accordance with this chapter.

. . . .

**105.06 Application; bond. (1)** Application for an employment agent's license shall be made to the department and accompanied by a bond in due form to the state for the penal sum of $5,000 issued by a surety company licensed to do business in this state to be approved by the department, conditioned that the

agent will conform to and not violate this chapter or the rules of the department issued thereunder.

. . . .

**(2)** Persons whose fees or charges are paid directly by employers shall register annually with the department to engage in the business specified in s. 105.01 (1) (intro.). The fee to register under this subsection is $5.

¶ 9. The following section from the Wisconsin Administrative Code applies: **"DWD 277.015 Employer-paid fee employment agent registration. (1)** All employer-paid fee employment agents shall pay a $5.00 registration fee and register with the department by July 1 of each year for the period of July 1 through June 30 of the following year." When other sections of Chapter 105 have an important bearing on resolving the dispute before us, they will, in part, be incorporated as appropriate.

## APPLICATION

¶ 10.  At the outset, there is no dispute that Global performed its recruitment contract and that Hart failed to pay the recruitment fee. It is also undisputed that on May 31, 2003, Global had submitted the required $5 check for registration, but somehow the registration was misplaced in the Equal Rights Division of the DWD.

¶ 11.  On December 8, 2004, Global entered into a fee agreement for the placement of a sales representative with Hart. On March 1, 2005, Global placed a sales representative for Hart. On April 15, 2005, the employee quit Hart's employ. Global made a demand on Hart for the placement fee. In reaction to the demand, Hart made inquiry to DWD about Global's status as a regulated employment business. Concurrently, on June

9, 2005, Global commenced this action. Hart's inquiry revealed that somehow Global was not registered with the department. When Global was apprised of this situation, it paid its registration fees for the year ending June 30, 2005, and for the year ending June 30, 2006. We thus must address Hart's claim that the contract was void and illegal under Chapter 105 and WIS. ADMIN. CODE § DWD 277 (2004) because of a delinquent registration during the year 2004.

¶ 12. To initiate our analysis, it is enlightening to briefly review the legislative history of the employment agent statutory law. The Wisconsin legislature first enacted laws regulating the employment business in 1899. Throughout most of the chapter's long history, with one minor exception,[2] no distinctions were made as to the form or type of operation the employment business enterprise might assume and the necessity of first obtaining a license from the state. A broad definition of an "employment agent" was applied. In 1969, however, the employment business became more specialized and defined exceptions to the definition of an "employment agent" began to appear in WIS. STAT. § 105.01(1). Temporary help services, hiring halls operated by bona fide labor unions, and theatrical or booking agents, were specifically excluded from the definition. In 1973, employment counselors were added to this list of exclusions. Finally, in 1989, by Wisconsin Legislative Act 220, subsection (f) was added to § 105.01(1) and, for the first time, excluded from the definition of an "Employment Agent" any "person whose fees or charges are paid entirely by an employer." *See*

---

[2] The minor exception was for self-help employers. *See* Laws of 1928, ch. 142.

Wis. Stat. § 105.01(1)(f). At the same time, other amendments to Chapter 105 were enacted to complement this new exclusion.

¶ 13. Wisconsin Stat. § 105.05(1), entitled "Agent's license" was amended by inserting immediately after the provision for the necessity of licensure: "No person whose fees or charges are paid directly by employers may engage in the business specified in s. 105.01 (1) (intro.) without registering under s. 105.06 (2)." Wisconsin Stat. § 105.06(2) was created to read: "Persons whose fees . . . are paid . . . by employers shall register annually with the department to engage in the business specified in s. 105.01 (1) (intro.)." Wisconsin Admin. Code § DWD 277.015 added a substantially similar provision.

¶ 14. As a result of the changes within Wis. Stat. § 105.05(1) itself, some distinctions were created that formerly did not exist. This section, as amended, consists of five sentences. Sentences (1), (3), (4) and (5) relate in each case to an "employment agent"; whereas sentence (2) relates solely to a "person whose fees . . . are paid directly by employers . . . ." Sentence (1) requires a person who wants to become an "employment agent" to *first obtain a license and execute a bond.* Sentences (3) through (5) set forth additional conditions of licensure. In contrast to the provisions applicable for becoming an "employment agent," there is no expression of application of these prerequisites and conditions to the employment agent whose fees are paid directly by the employer.

¶ 15. Next, Wis. Stat. § 105.11(1) was amended to no longer require that the fees charged employers by an employer-paid employment agent be submitted to the department for review and approval.

¶ 16. Lastly, Wis. Stat. § 105.15 was amended by adding the following language to the penalty provisions:

"The department may also order a person who operates an employment agency in violation of s. 105.05 (1) to make refunds as provided under s. 105.16 (2)." There is no express reference to a person whose fees are paid directly by employers.

¶ 17.   Concluding this historical summary as pertinent to our analysis, we note that at no time has there ever been explicated the policy rationale for this legislation. Suffice it to say, the legislature, as a matter of public policy, decided to regulate this type of business enterprise in the public interest as it thought best.

¶ 18.   In support of the trial court's grant of summary judgment, Global argues that the question of enforceability of its contract was directly affected by these legislative changes and the changes reflect a significant change in public policy. To examine this question, we first looked to Wisconsin authority, but our search for meaningful precedent has been of no avail. There exists no case law in Wisconsin addressing whether a contract made with an employer-paid agent is void if that agent is not registered with the State at the time of execution and performance of the contract.

¶ 19.   Hart offers the following cases to support his assertion that the recruiting agreement he signed is void for failure to comply with the statute:   *Hitpold v. T-Shirts Plus, Inc.*, 98 Wis. 2d 711, 298 N.W.2d 217 (Ct. App. 1980), *Sponholz v. Meyer*, 270 Wis. 288, 70 N.W.2d 619 (1955), and *Kryl v. Frank Holton & Co.*, 217 Wis. 628, 259 N.W. 828 (1935). We have reviewed these decisions and conclude they are of little persuasive value either because of the nature of the statutes involved, or because the prohibited activity was subject to penalties or obvious evidence of a strong desire to protect the public interest exists.

¶ 20. The question presented, however, has not gone without notice or consideration in other jurisdictions. Scholars in the field have synthesized the conclusions of these courts, among these the RESTATEMENT (SECOND) OF CONTRACTS § 178, Chapter 8, Unenforceability on Grounds of Public Policy, Introductory Note (1981), 8 WILLISTON ON CONTRACTS, § 19:51, Minor Violations of Statutory Prohibitions (4th ed. 2006), and 6A CORBIN ON CONTRACTS: A COMPREHENSIVE TREATISE ON THE WORKING RULES OF CONTRACT LAW §§ 1515–19 (1962). Because both Williston and Corbin refer with deference to the RESTATEMENT (SECOND) OF CONTRACTS' analysis of the Effect of Failure to Comply with Licensing or Similar Requirements § 181, we turn our attention to its contents. This section reads:

> If a party is prohibited from doing an act because of his failure to comply with a licensing, registration or similar requirement, a promise in consideration of his doing that act or of his promise to do it is unenforceable on grounds of public policy if
>
> (a) the requirement has a regulatory purpose, and
>
> (b) the interest in the enforcement of the promise is clearly outweighed by the public policy behind the requirement.

¶ 21. From the Comment to this section we learn it is directly dependent on § 178 for a method of application. This section reads:

> § 178. When a Term is Unenforceable on Grounds of Public Policy.
>
> (1) A promise or other term of an agreement is unenforceable on grounds of public policy if legislation provides that it is unenforceable or the interest in its

815

enforcement is clearly outweighed in the circumstances by a public policy against the enforcement of such terms.

(2) In weighing the interest in the enforcement of a term, account is taken of

(a) the parties' justified expectations,

(b) any forfeiture that would result if enforcement were denied, and

(c) any special public interest in the enforcement of the particular term.

(3) In weighing a public policy against enforcement of a term, account is taken of

(a) the strength of that policy as manifested by legislation or judicial decisions,

(b) the likelihood that a refusal to enforce the term will further that policy,

(c) the seriousness of any misconduct involved and the extent to which it was deliberate, and

(d) the directness of the connection between that misconduct and the term.

¶ 22.   In examining the inter-dependency of these two sections, it is readily apparent that a balancing of interests test is applied. The resolution of the enforce-ability issue is reached by balancing the interest of enforcing the particular promise with the policy against the enforcement of such terms in light of all the circumstances.

¶ 23.   In its comment to § 178, the Restatement observes that a factor critical to the balancing process is the strength of the public policy as expressed in the

statute as a whole. Is the contract under consideration expressly forbidden? Is a penalty imposed for its creation? This inquiry leads us to the questions of whether the contravention of public policy as expressed in the statute is so grave, that its unenforceability is quite plain. Stated otherwise, does the weakness in the expression of the public policy lead to the conclusion that such a violation is at best "*de minimus*." The comment opines: "Enforcement will be denied only if the factors that argue against enforcement clearly outweigh the law's traditional interest in protecting the expectations of the parties, its abhorrence of any unjust enrichment, and any public interest in the enforcement of the particular term." RESTATEMENT (SECOND) OF CONTRACTS § 178 cmt. b.

██

¶ 24.   The circumspect quality of the Restatement methodology, when matched with its analytical thoroughness, is persuasive. We hereby adopt it and shall now apply it to the uncontested facts and statutory authority before us.

¶ 25.   In reviewing the provisions of Chapter 105 and WIS. ADMIN. CODE § DWD 277, in summary, we note the following. While we are examining a general legislative regulatory scheme, there is quite clearly a distinction between a defined "employment agent" and an *employer-paid* employment agent. The former may not engage in the business of an "employment agent" until it has first obtained a license and a performance bond. The latter is clearly not required to first be licensed and bonded. It must only be registered with the payment of a $5 fee before it engages in the employment business. The latter was originally required to be licensed but is no longer so obligated. The latter's fee schedules are no longer subject to supervision; the former's still are. The

former is subject to an elaborate reporting and inspection system. The latter is not subject to this regimen. Within the statutes and the regulations, there are no penalty provisions applicable to the latter, but there are for the former. There is no expressed sanction provided for failure to timely fulfill the registration requirement, but for an "employment agent" there is a daily fine of $5 for failure to timely renew one's license or timely file required reports.

¶ 26.   When it comes to applying for a license as an "employment agent" versus registering as an employer-paid employment recruiter, the distinction is quite remarkable. In the case of the former, the application for license must be accompanied with a minimum filing fee of $50 and a surety bond for $5,000. The approval process contemplates a public hearing with a fact-finding process relating to the sufficiency of the applicant's character and the suitability of proposed business premises. Any findings of fact and conclusions of law made during this process are additionally subject to appeal.

¶ 27.   In contrast, Chapter 105 and WIS. ADMIN. CODE DWD 277 provide that a person who is an employer-paid agent may not engage in employment recruiting without registering. We note the simplicity of this process. The filing fee for registering is only $5, renewable each year. The application form asks merely for the names, addresses/phone numbers of the operators, and the type of business form contemplated. Next, it requires a list of the names and addresses of all of the stockholders, partners or owners. That is all of the information that is necessary. No other process is required.

¶ 28.   Without pointing to any expressed basis in Chapter 105, Hart speculates that the legislature's

intention to enforce public policy was to render void contracts such as Global's if a company fails to register. Yet plainly, the statutory language does not support such a conclusion.

¶ 29. The only reasonable inference that can be drawn in view of the 1989 amendments is that the legislature, in its wisdom, saw less need to protect the public interest from inappropriate actions of employer-paid employment agents and consequently intended to apply less stringent supervision over them. This is evidenced by the exclusion of employer-paid agents from the definition of "employment agents" in the statute and by the paucity of provisions applying to employer-paid agents versus "employment agents" in both Chapter 105 and DWD 277. Hence, the stringent public policy as it at one time applied to employer-paid agents no longer demonstrates the strength that it was originally provided.

■■

¶ 30. We now turn to further elements of the Restatement's balancing test. It is uncontroverted that Global and Hart, as two business entities, entered into an arms-length employment recruiting transaction in which Hart was to pay a recruiting fee for the placement of a sales representative. It is undisputed that the essential elements of the contract were not prohibited by law or that the contract was performed. Thus, but for Hart's position that the claim is unenforceable, the recruiting fee is owed to Global.

¶ 31. The plain language of the 1989 amended statutes does not evince an intent to have a delinquent payment of a registration fee of $5 trump the enforcement of a performed contract. To relieve Hart of its $24,300 obligation would provoke an enormous forfeiture far out of proportion to the nature of the violation.

¶ 32.   On balance then, we conclude that because the essential terms of the recruiting contract were not prohibited by law, the original intended expectations of the parties were met. We further conclude that the strength of the original public policy impliedly intended has been greatly diminished by the clear language of the statutory amendments to Chapter 105, and that the delinquent registration caused no discernible societal damage. Consequently, declaring the contract void would cause unwarranted unjust enrichment, and therefore we affirm the decision of the trial court.

*By the Court.*—Judgment affirmed.